Chief Justice Maeshai.e
delivered the opinion of the Court.
This bill was filed by three of t.he children and heirs of Mrs. Chloe Prescott, deceased, formerly Chloe Sawyer, against her other children and heirs and her husband, John H. Prescott, for a division of certain' slaves, which they allege became the property of the children of said Chloe after her death, under and by virtue of a clause in t.heir grandfather’s will. John H. Prescott, the father of the complainants, contests their claim, on the ground, first, that the will referred to gives them no interest in the slaves, and, secondly, that he had had them in posession as his own for many years, and for seven years after the death of his wife, claiming them as his own, &c. The principal question in the case, arises under the will of David D. Sawyer, admitted to record in May, 1809, and which contains the following clause, under which the two slaves, therein mentioned, from whom the others nowin contest descended,passed to the deiisee, Chloe Saw'yer, and are now’’ claimed by her children: “Item, I lend the use of negroes Kate and George to my daughter Chloe Sawyer during her natural life, and at her death to be equally divided between the heirs lawfully begotten of her body, and for the want of such heirs, to fall to my daughter, Fanny Sawyer.” A previous clause gives two slaves to the daughter Fanny, in precisely the same terms, and they are to fall to Chloe on the same contingency. But the contingency provided for does not appear to have happened, and the case stands upon the clause above quo *57 ted. The question is, whether the words “heirs of her body” are to be regarded as words of purchase, giving to the persons thereby d'esigfaated, an independent estate, to commence in possession at the death of the devisee, for life, or whether they are to be taken as words of limitation, attaching to the previous estate, and enlarging it from an estate for life to an estate tail, which would give to the first devisee the absolute property; the consequence of w’hich woiild be, that on her marriage, the slaves vested in her husband absolutely, and 'the persons who were the heirs of her body a’t 'her 'death would, as such, be wholly cut off.
“I, lend the use of negroes Kand G to my daughter C during her natural life, a¡nd at her death-:.to be equally divided between the heirs lawfully-begotten of her body, and for the want of such heirs, to fall to my daughter F,’’ held that upon the death of the daughter G, the slaves K. and G and their increase belonged to her children.
Upon the words of the clause", we think it impossible to doubt tliht the actual intention-'of the testator was", that his daughter should have only an estate for life, and that at her death, such persons as were then the heirs of her body should ta'ke the slaves, and ’for want ‘of suéfi heii’s at that time', they should pass to the other daughter, Fanny. This intention is indicated, not only by the express Iimitatión during the natural life of the first devisee, but also by the terms of the gift to her, which import that she is to have the usufructuary in* terest only; and especially by the expressions, “ and at her death to be equally divided between the lawfully begotten heirs of her body,” by which it is clearly denoted that there was to be a division at her death, among those who, at that time, should answer the description of “ heirs of her body,” (probably meaning, her children,) and that the testator intended a benefit to those particular persons, and did not intend to embrace the whole line of heirs of the body, to take in succession. And although it may be certain that the alternate devisee, Fanny, could not take under the will as long as there should be heirs of the body of the first devisee", we deem it equally certain, upon the words of the ‘will; that it was only on the contingency of there being no heirs of the body of the first devisee, who might take at her death, that the alternate devise in remaindér was to nave effect. The word such in the devise over is relative only, and the expression “ for want of such Heirs” *58 means, for want of such heirs as were before designated 'and provided for, that is, heirs of the body of the first devisee living at her death.
The words “heir of the body” are properly used as words of limitation, and properly used for the creation of estates tail, which is an estate to a person, and the heirs (general or speeial)ofhis bo- ' dy. It is also true that the words “heirs of the body” — “heirs ”— •‘heirs male or female of the body or of two bodies” may be used and operate as words ot purchase.
It is true, the words “heirs of her body” are-appropriate words of limitation, and commonly and properly used for the creation of an estate tail, W'hich is an estate to a person and the heirs (general or special) of his body. But it is also well settled by numerous decisions, that not only “heirs of the body,” but the more general word “ heirs” or the more specific terms “heirs male, or heirs female of the body, or of two bodies,” may be used and operate as words of purchase. It is a question of intention, whether these words are used to denote the whole line'of heirs of the sort described, to take in succession as such heirs, or to denote only a par--t ticular person or class of persons who may come under • that description at the time. When used in the former'• sense, they are words of limitation; dfefinirig or limiting» the previous estate to which they apply. When used-* in the latter sense, they operate merely as designation persona or personarum; and are held to be words of pur- * chase giving a new estate to the person designated.
If it be conceded that the rule in Shelly’s case, “ that wherever the ancestor takes an estate for life, and in the same conveyance an estate is limited to his heirs or the heirs of his body, he will be vested with the fee, arid his heirs will take by descent, and not by purchase,” (4 Bibb, 390,) is authoritative here, and applicable to a devise of slaves, its application is still subject to the question of the sense in which the word “ heirs, or heirs of the body” are used. And although it may be prima jade inferred that the testator used the words as embracing the whole line of his heirs in succession, this inference may be overthrown by circumstances indicating with sufficient certainty a contrary intention, “ to use the words in a more restrictive and untechnical sense, and to point out such indi vidual.person (or persons) as should be the heir, &c. of the tenant .for life at his decease:” (Fearne on Rem. 188—9.) And if *59 the words are so used, the application of the rule is repelled : (lb.)
In the cases of Doe vs Leming, (2 Burr, 1100;) of Doe vs Goff, (11 East. 688;) Gretton vs Howard, (6 Taunton, 94;) and other English cases, in some of which the first devise was not expressly for life, the technical sense of the words “heirs of the body,” was held to be restricted, and those words to be read as words of purchase, by reason of such additional words or directions as broke the ordinary course of descent, and showed that the estate was not to descend from the first devisee. Among these, the circumstance that the heirs of the body were, at the death of the first devisee, to take the estate expressly, share and share alike, or as tenants in common, or that it was to be equally divided between them, &c., held a prominent place; and in the two last cases this circumstance was clearly deemed sufficient to demonstrate that the testator meant “children,” and not the whole line of heirs in succession. The case of McNair’s administrator vs Hawkins, (4 Bibb, 390,) decided in this Court in 1816, adopts the same principle. And although the modern case of Jesson vs Wright, (2 Bligh. 1,) in which the House of Lords reversed the judgment of the King’s Bench, in Doe vs Jesson, (5 Maul & Sel., 95,) has, in opposition to the decision in the King’s Bench, overruled the prior cases above cited in the point referred to; and although the decision in Jesson vs Wright may have been since followed, not only in England, but in several of the United States, as in Ross vs Toms, (4 Devereux’ Reports, 277,) we find no case in which this Court has abandoned the principle recognized in the case of McNair’s administrator vs Hawkins, and we do not feel bound to change the rule of property, as deduced from the decisions of our own Courts, declaring the law in conformity with former decisions in England, because the Courts of that country have changed the rule or declared it to be different, and have been followed in this change by other Courts in this country. It is man-;fest from the opinion delivered in the case of Ross vs *60 Toms, (supra,) that if Jesson vs Wright had not been decided, or had not been heard of, the Oourt.of North Carolina would have decided the case in conformity with the .principles of Doe vs Goff and Gretton vs Howard,
TJ^e testator held to ’in tend by the terms “heirs awfully begotten of h!er body” children at her death.'1’
We adhere to the principle of the case of McNair’s administrator vs Hawkins, (4 Bibb, 390,) and are o,f ■opinion that there is enough in this devise, to show that the testator did not use the words, “heirs of her body,” ■ in the technical sense as embracing the whole line of her descendants in succession, but in the restricted and nntechnical sense of denoting the individuals who might lie the heirs oft her body at the time of her death. We will not, on the presumption of a benefit intended to the whole line of heirs, as long as there should ,bq any, and of a benefit intended to the daughter Fanny, or her heirs, upon the indefinite failure of the first ¡line, however remote, give a construction to the clause.contrary to the. natural meaning of the words, and by which all benefit of the devise is taken away, both from the heirs of ^he body of the first devisee and from those who were tothave the remainder. And we remark, as affonjipg sonqe cpnfirmation to. the view we have taken, that the ultimate devise is not to the daughter Fanny and her heirs, but to her alone.
We are of opinion, therefore, that/ the children of .Chloe Prescott, living at her death, and. who were then ■ the only heirs of her body, were entitled to the two slayes and their increase, to be equally divided beiyveen them. And as their father had not openly avowpd an adverse claim, or possession, until wit.hin five years before this suit was brought, and had within that period admitted the title of his children, the statute of limitations cannot avail him as a bar to their claim., The complainants were therefore entitled to. their share of the slaves, and to their rateable proportion of the hire for five years prior to the institution of the suit and up to the time of division or salp, the plea of the statute cutting off the claim for previous hire.
The Court had jurisdiction to decree a division or saje of the slaves, and as incidental, thereto, to. deter-. *61 mine the question, of title set up by-the father who had only a part of;'the slaves in possession, some of them having been ¡^possession of one of the devisees.
The Chancellor has jurisdiction to decree a division of slaves-, and a sale thereof and in such suit to decide upon the title of' parts of the lots, claimed by oth,. ers.
J. 4- W. L. Harlan for plaintiff; A. Monroe for defendants.
With regard' to the slave George,.who was sold by JpH. Prescott, the-complainants are not entitled to follow, his price into.the. land for which it was paid, but mpstteither follow the slave himself, or be content with the .price for which he w.as sold with interest, or with his present value and hire, of which the former was given byv- the decree. This claim seems not to be resisted on,the ground of lapse of time.
Upon scrutinizing the evidence with regard to the value of the. hire of the slaves, we think it authorizes the amount decreed, if the complainants were entitled to the hire .fo.r the entire period after the death of their mother But, as their claim for a part of this period is barred by the statute of limitations, the decree is for too large a sum to each of the complainants.
Wherefore the decree, so far as it relates to the sale* of the slaves and the distribution of the proceeds is af-'. firmed, but so far as it decrees the payment of .'money by the defendant, John H. Prescott, to the complainants, it is reversed, as being^foj greater sums than are recoverable under the plea pf.the statute, and the cause, as to that branch of it, ,is¡ remanded with directions to ascertain and decree to the -complainants, respectively, their.-portipijs of the price of 'George, with the interest thereon, from .the death of Chloe Prescott, the devisee for -life; ;and also their portions of the hire of the other.slaves for the period above indicated, commencing five years before the institution of this suit.