Mr. Justice Walker delivered the opinion of the Court. The complainants, as heirs of Susan Mills, filed their bill in chancery against the defendants, to recover a negro woman and child, which they claim as devisees'of their grand father, Thomas Humphreys. They state that, by the will, the woman slaye, Cynthia, was devised to their mother Susan Mills, to be enjoyed by her during her lifetime, and to her heirs after her death, and that she is dead leaving them her heirs. The clause of the will under which they claim the slave and her child, is in the following words: “I also bequeath to my daughter, Suckey Mills, my negro girl Cynthia, to be enjoyed by her during her lifetime, and then to descend to her lawful heirs, together with Cynthia’s increase, should she have any.” At common law, there was no remainder to a chattel interest, and any gift or bequest of a chattel, no matter how short the time, passed the absolute property. This rule was gradully relaxed, and a distinction taken between a gift of the thing itself and of the use of the thing, the law attaching a validity to the latter, which it denied to the former. This modification of the common law rule in time also gave way to the rule, as we now understand it to exist, that whether the gift be of the thing itself for life, or only of the use of the thing, a limitation over to a subsequent devisee after the decease of the first taker, will be supported. Such life estate or use however must be clearly expressed; for it has been decided, with great unanimity, not only by the English and American courts, but also by this court, that whatever will directly or constructively constitute an estate in tail in lands, will pass an absolute estate in personal property. Chancellor Kent, in his Com., voL 2, 352-3, says that “chattels or money may be limited over after a life interest, but not after a gift of the absolute property; nor can there be an estate tail in a chattel interest, for that would lead to a perpetuity, and no remainder over can be permitted on such a limitation. That it is a settled rule that the same words, which, under the English law, would create an estate tail as to freeholds, give the absolute property as to chattels.” The words, “lawful heirs,” “heirs of the body,” &c., are tire technical terms used in creating an estate in tail, and when used in executory devises in connexion with the other language employed, the important inquiry often is, whether they are to be taken as words of purchase, giving to the person thereby designated an estate to commence in possession at the death of the devisee for life, or whether they are to be taken as words of limitation attaching to the previous estate, and enlarging it from an estate for life to an estate tail, which would give to the first de-visee the absolute property. If the word “heirs,” or“hehv of the body,” are used by the testator to denote the second devisee, or one who is to take after the life estate is determined, and there are no other words in connexion with them tending to show that they are used as words of purchase, they will always be taken as words of limitation, and when personal property is devised, will vest in the first devisee the absolute estate. It is not necessary, however, that this qualifying language should stand in immediate connexion with the word “heirs,” or “heirs of the body,” if found any where in the instrument used as a conveyance, and in connexion with these words, clearly and plainly denotes an intention to restrict the limitation over to the death of the first devisee. The technical sense in which these words would otherwise be taken, should not prevail, but should yield to such intention thus clearly ascertained, In the case of Moody v. Walker, 3 Ark. Rep. 147, several of the questions now under consideration were discussed, and the English and American decisions reviewed. The examination which we have made of these and several more recent decisions, adds to our conviction that the law was correctly expounded in that case. One or two of the numerous cases cited, may serve to show the extent to which several of the courts of the United States have gone. In Horne v. Lythe, 4 Har. & John. 431, a searching review is taken, by Chief Justice Dorsey, of Shelly's case, and most of the English decisions. In the case of Horne v. Lythe, the devise was to the daughter during her life, and after her decease, I give the same to the heirs of my said daughter Catharine.” It was held that the daughter took a fee simple, not a life estate in the property. In Dott v. Cunnington, 13 Bay Rep. 453, a deed was made to Sarah Dott for a slave, to be held during her life and at her death to the heirs of her body. It was held that the words, “at her death, to the heirs of her body,” were words of limitation, not of purchase. The court say, “What then is the plain and obvious construction of the law upon the words of this deed? The answer is plain. That the estate being given to Mrs. Dott for life, with remainder over to the heirs of her body, make it an estate tail executed, which being of a chattel interest is too remote. The whole estate vested in Mrs. Dott, the first taker; consequently being her property, the second husband acquired a right to it by marriage. In Floyd v. Thompson, 4 Dev. & Batt. 438, it was held that a bequest “for the use and benefit of a daughter during her natural life, and then to descend to the heirs of her body, if any, if none, then to her lawful heirs,” gave the daughter an absolute estate in the slaves. In Watt v. Clardy, 2 Flor. Rep. 368, the language was “loan the negroes during her natural life, and at her death to the heirs of her body, which shall survive her, to be equally divided amongst them.” The supreme court of Florida held that the daughter took an absolute estate in the slaves. These are stronger cases than the one under consideration, and indeed stronger than several cases where the language has been held sufficiently strong to vest a life-estate in the first de-visee, with a limitation over to the heir. Such would seem to be the construction given by the court of Appeals of Kentucky. Prescott v. Prescott’s heirs, 10 B. Mon. 56. At first view, these appear to be strong cases, in which an obvious intention of the testator might be deduced from the language used. It must be remembered, howevér, that the will of the testator and the policy of the law, often conflict. The testator, in his anxiety to perpetuate his property in a line of succession, invades that policy of the law which discountenances per-petuities. Before the statute de donis, the courts, seeing the evils which attended entailments, had done much to lessen it by rigid construction. After that statute, fine and recovery were resorted to, to avoid the effect of entailments; and as the statute did not extend to executory devises, they could not be barred by fine and common recovery; and hence a date of limitation arose both in regard to devises of real estate and chattels. It is in the protection of this policy, that the apparent hardships arise. A series of adjudications have established a definite meaning to these words until they have become a rule of property, which we should be careful not to invade. There is nothing in this devise to limit or qualify the words “lawful heirs.” ít follows, therefore, from the premises assumed, that Susan Mills acquired under the will of her father, Thomas Humphreys, not a life estate as contended for by complainants, but an absoluté property in the slave Cynthia, which property passed at once to and vested in her husband, Ambrose Mills, and at his death became the property of his de-visees, if he made a will, or in the absence of a will, to his widow and children under the statute of descents. The counsel for the complainants have anticipated the decision of the court on this point, and contend that, although they may not be entitled to the slaves as devisees of Thomas Hum-phreys, yet if it be found that Susan Mills took the absolute estate in the slaves, they vested absolutely in her husband, and that on his death they acquired title to the slaves as his heirs at law. This may, in the absence of a will and other children by some other marriage, be all true. But the question is, have they presented such a state of facts in their bill as will entitle them to a decree in this particular case? Are these facts put in issue by the bill and answer? We think not. In the first place they claim exclusively under the will of their grand-father, and state that they are the heirs of Susan Mills; but this is merely to identify themselves as the devisees. They profess to have derived title directly from Thomas Humphreys, under his will. How then can they prove that they are the heirs of Ambrose Mills? That fact was not put in issue, and nothing is evidence but what tends to prove some material fact in issue. Not only this, but they expressly state that Susan Mills had only a life estate, and that she and her husband never claimed any other estate, which estate they charge terminated at the death of their mother. It is manifestly clear that this allegation cannot be contradicted by them. Greslcy on Equity Evidence, page 165, says, “For parties to disprove facts which they have themselves admitted, would be a mere mockery; the plaintiff would be repudiating the statements which he had laid down as the basis for his demand for justice:” and at page 159, he says, “The main object of allowing pleadings at all is, that the disputed points may be brought to issue clearly and definitely, and this object would be entirely frustrated if, after the pleadings were closed, the questions were permitted to be repeatedly altered.” In the case of Piatt v. Vattiers et al., 9 Peters Rep. 4-05, in which the statute of limitations was relied on, and it became important for the complainants to establish the non-residence of the party, and proofs were taken to that point; held, by Stohy, Judge, that the court could take no notice of the proofs, for the proofs, to be admissible, must be founded upon some allegation in the bill and answer, and the bill was dismissed. The grounds of equity should bo stated with clearness and precision; for the complainant can only recover on the validity of his title stated in the bill. Tingman v. Henderson, 1 Bland R. 249. He must stand or fall upon the case made by his bill. Thomas v. Warner, 1 Slade’s Verm. R. 110. Wright v. Dane, 22 Pick. 55. Gibson v. McCormack, 10 Gill & John. 65. Lucas v. McBlair, 12 Gill & John. 1. A fact not alleged, through proven, cannot be the basis of a decree. Morrison v. Hart, 2 Bibb 4. These authorities abundantly show that no decree can be rendered for the complainants, admitting it to be in proof that they are the sole heirs of Ambrose Mills, and that he died intestate, for there is not a material fact put in issue by the pleadings to which the evidence could apply, or on which a decree could be based. If the complainants have equitable rights, as heirs of Ambrose Mills, they must assert them in another suit. This is not a suit where a title is defectively stated; but where the grounds upon which rests the claim to equitable relief, had been entirely misapprehended. Let the decree of the court below be reversed and set aside, and the bill dismissed, without prejudice to the rights of complainants.