*HENRY W. PATRICK and others v. J. T. MOREHEAD and others.

*Construction of Will—Power—Rule in Shelley's Case.*

1. A devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee; but where the estate is given for life only, the devisee takes only an estate for life, though a power of disposition, or to appoint the fee by deed or will, be annexed.

2. A testator devised as follows:—"I give unto my grandson, J. D. P., the plantation known as the old 'Iron Works,' to hold during his lifetime, and if it shall so happen that he has any lawful heirs, I give it to them or any of them that he may think proper; and should it so happen that he dies without any lawful issue, for the land to be equally divided among all my grandchildren." At the death of testator J. D. P. was about fourteen years of age and unmarried; and at the date of the will the testator's son, J. P., and daughter, M. F., had children then living;

*Held,* that J. D. P. took a life estate only, and that the remainder in fee vested in his children as purchasers.

(*Alexander* v. *Cunningham*, 5 Ired., 430; *Bass* v. *Bass*, 78 N. C., 374; *Allen* v. *Pass*, 4 Dev. & Bat., 77; *Ward* v. *Jones*, 5 Ired. Eq. 400, cited and approved.)

CONTROVERSY without action under section 325 of the Code, for the construction of a will, heard at Fall Term, 1880, of ROCKINGHAM Superior Court, before *Eure, J.*

*Case agreed.*—The facts agreed upon are as follows: James

---

*Ruffin, J., did not sit on the hearing of this case.

.Patrick, Sen., late of Rockingham county, died in the year 1835, having first made and published his last will and testament, bearing date the 28th of March, 1835, which was duly admitted to probate at May term, 1835, of the county court of said county. He died seized and possessed of the land in dispute.

In the third clause of his will he devised as follows: " I give unto my grandson, James Dillon Patrick, the plantation known as the old ' Iron Works,' containing about eight hundred acres of land, to hold during his life time, and if it shall so happen that he has any lawful heirs, I give it to them, or any of them that he may think proper; and should it so happen that he dies without any lawful issue, for the land to be equally divided among all my male grandchildren. I likewise give him my three negroes, York, Jane and Bob, together with all the plantation tools, one set of smith-tools and carpenter-tools, and I give my executors privilege to sell all the stock at the old Iron works, either publicly or privately, discretionary with themselves, and the money thence arising I give to my grandson, James D. Patrick."

At the time of the testator's death, James D. Patrick was an infant about fourteen years of age and unmarried. He died about the first of May, 1879. About the year 1849 or 1850, several creditors recovered judgments against him amounting to some $579, upon which executions issued and were levied upon the land in controversy, and the interest of the said James D. in the same was sold by the sheriff and bought by James T. Morehead, Sen., (deceased) and John A. Gilmer, (deceased) and Gilmer conveyed his interest in the land to Morehead, Sen.

The plaintiffs are the children and only heirs at law of the said James D. Patrick, and the defendants are the only heirs at law of James T. Morehead, Sen.

At the date of testator's will, his son James Patrick and

his daughter Mary Foulkes, each had children then living. The land on the first of May, 1879, was assessed at $5,000, which is a reasonable valuation, and the net yearly value since that time is $111.33.

Upon this state of facts it was agreed, if the court shall be of opinion with the plaintiffs, then they are to have judgment for the recovery of the land and for $—— damages, for rents and profits thereof and for costs, but if the court shall be of opinion with the defendants, they are to have judgment.

The court thereupon adjudged, first, that the plaintiffs have not the title to the land described in the case agreed; and secondly, that defendants have the fee simple title to the same; and from this judgment the plaintiffs appealed.

*Mr. E. S. Martin,* for plaintiffs.
No counsel for defendants.

ASHE, J. This case comes up by appeal from a judgment rendered in the court below on a statement of facts agreed upon by counsel in a controversy submitted without action. The statement contains the following clause in the last will and testament of James Patrick, Sen., namely: " I give to my gandson James D. Patrick, the plantation known as the old ' Iron Works,' containing about eight hundred acres of land, to hold during his life time, and if it shall so happen that he has any lawful heirs, I give it to them or any of them that he may think proper; and should it so happen that he dies without any lawful issue, for the land to be equally divided between all my male grandchildren."

The plaintiffs claim that James D. Patrick, their father, under the third clause of his grandfather's will took a life estate in the land, and they, the remainder in fee simple after his death; and that the sheriff's deed to Morehead and Gilmer conveyed only the interest of James D. Patrick,

which terminated at his death on the first of May, 1879. The defendants on the other hand resist this construction of the will, and claim that James D. Patrick by the devise to him acquired an absolute estate in the land, and that they as heirs of James T. Morehead, deceased, have the fee simple title. And we are now called upon to determine the true construction of the above recited clause in the will of James Patrick, Sen., and to decide whether James D. Patrick took thereby an estate in fee simple or only an estate for life with remainder to his children or descendants.

It is the well settled rule in the judicial construction of wills, that the intention of the testator shall prevail unless it contravenes some established principle of law. It is therefore our duty to ascertain what the intention of the testator was, and to effectuate that intention if warranted by law in so doing.

There perhaps is no branch of the law that has given rise to more conflicting decisions, or a greater display of legal learning, than the application of the rule in *Shelley's* case to the construction of deeds and wills. But fortunately in this case we are not compelled to grope our way through the mist with which the subject has been enveloped by the many clashing decisions, to reach what we conceive to be the correct interpretation of the will under consideration. A few decisions of our own court with some others lead, we think, to a satisfactory solution of the question.

It has been settled upon unquestionable authority, that if an estate be given by will to a person generally with a power of disposition or appointment, it carries the fee; but if it be given to one for life only and there is annexed to it such a power, it does not enlarge his estate, but gives him only an estate for life.

In the case of *Jackson* v. *Robbins*, 16 Johnson Rep., 537, the court say: "We may lay it down as an incontrovertible rule that where an estate is given to a person generally

or indefinitely with a power of disposition, it carries a fee, and the only exception to the rule is where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposition. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion."

In this state in the case of *Alexander* v. *Cunningham*, 5 Ired., 430, which was a petition for dower, depending upon the construction of a will which read, " I will to my son, M. W. Alexander, all my estate, real and personal, for his use and benefit and then to be divided off and distributed among his children, as he may think proper, that is to say, my land to be used by him and the profits thereof to be to him, but the land to be by him divided and distributed as he may think proper," Chief Justice RUFFIN in delivering the opinion of the court, said : " We are of the opinion that the son took but an estate for life, with the power of dividing the land and the other property within his life-time or at his death among his children as purchasers from the testator ; and that until such an appointment, the remainder in fee either vested in the children, or descended to the heirs of the testator. *It is very clear that where there is an express estate for life to one, and a power to him to appoint the estate among certain persons, the first taker gets but an estate for life.*" Same principle in Sugden on Powers, 15 Law Lib., 66 ; *Bass* v. *Bass*, 78 N. C., 374.

It is true the word employed in the will in *Alexander* v. *Cunningham* was " children," but that does not affect the appositeness of the authority, for it is evident the testator in this will did not use the words " lawful heirs" in their technical sense, but as synonymous with issue or children. The father, the brothers and sisters, and aunt of James D. Patrick, were all alive at the date of the will. Several of them were the objects of the testator's bounty. He knew if James

PATRICK v. MOREHEAD.

D. died immediately after the publication of his will that his brothers and sisters would be his heirs, and the very male grandchildren, to whom the estate was devised in the event of James D. Patrick's dying without issue, would have been his heirs, if all others standing in nearer degree had died before him. If he meant heirs general, why say " if it should so happen that he has any lawful heirs," &c., knowing at the time that the persons were then living who must be his lawful heirs, in the event of his dying, and that he must continue to have such heirs, so long as those to whom the land was limited in remainder continued to live. The words " if it shall so happen," &c., refer to the future, not to the class of heirs the devisee then had, but to a class yet to come into existence, and who could only be composed of his lineal descendants. If this be so, and we think it is too plain to admit of controversy, then the will should be construed, as reading, I give unto my grandson, James D. Patrick, the plantation, &c., to hold during his life-time, and if it should so happen that he has any heirs of his body, I give it to them, or any of them that he may think proper, &c. And if the devise had stopped with the words " I give it to them," it would have been a case clearly falling within the rule in *Shelley's* case, and by operation of the act of 1784, the defendants would have a title in fee simple. But the superadded words " or any of them that he may think proper," have an important bearing upon the question of interpretation, and we think prevent the application of the rule.

In *Allen* v. *Pass*, 4 Dev. & Bat., 77, Judge GASTON used the following language : " Before the application of the rule in *Shelley's* case, it is always proper first to ascertain whether, on the true interpretation of the words of the gift, there is a limitation of the inheritance in remainder to the *heirs*, or to the *heirs of the body*, of one to whom a precedent estate is given—such a limitation does exist when the limitation is to them in the *quality of heirs*—embracing the same num-

ber—in succession of objects and conferring the same extent
of interest, as would be embraced and conferred when the
inheritance has been limited to the ancestor." He proceeds
to say that when these requisites are embraced in the terms
of a devise, the rule in *Shelley's* case applies. But he adds:
"On the other hand, as the law will not entrap men by
words incautiously used, if in the limitation of a remainder
by any instrument of conveyance, the phrase *heirs* or *heirs
of the body* be expressed, but it is unequivocally seen that
the limitation is not made to them *in that character*, but sim-
ply as a number or class of individuals thus attempted to
be described, then the whole force of the phrase is restricted
to this designation or description—it shall have the same
operation as the words would have, of which it is the repre-
sentative; there is not in fact a limitation to *heirs*, and of
course there is no room for the application of the rule."

And in the more recent case of *Ward* v. *Jones*, 5 Ired.
Eq., 400, Chief Justice PEARSON says: "The rule in *Shelley's*
case only applies where the *same persons* will take the same
estate, whether they take by descent or purchase; in which
case they are made to take by descent, it being more favor-
able to dower, to the foedal incidents of seignories, and to
the rights of creditors, that the first taker should have an
estate of inheritance; but where the persons taking by pur-
chase would be different or have different estates, then they
would take by descent from the first taker, the rule does not
apply, and the first taker is confined to an estate for life, and
the heirs, heirs of the body, or issue in wills take as pur-
chasers."

In our case it was by no means certain when the will was
made, whether one or more or all of the issue which Jas. D.
Patrick might happen to have, would take the estate. It
was in his power, if he would have, as he did, more than
one child, to give the land to one of them; and that one
would not have taken the same estate which he would have

taken if the land had come to him by descent, for in the latter case he would have taken as tenant in common with his brothers and sisters, but as appointee the whole estate would have vested in him; and we do not conceive that it can make any difference that the power has not, in fact, been exercised. It is the existence of the power that affected the quality of the estate. It could not be foreseen whether it would be exercised or not, but was enough to prevent the application of the rule, that the limitation to the heirs of the devisee was coupled with a power, the exercise of which would prevent them from taking the same estate they would have taken if the land had come to them by descent from him.

Upon the authorities above cited and the deductions we have drawn from them, we are of the opinion that the judgment rendered in the court below was erroneous and that the plaintiffs are entitled to the land described in the pleadings in fee simple. The judgment of the superior court of Rockingham is therefore reversed and judgment must be rendered in this court in behalf of the plaintiffs.

Error. Reversed.