ELIZABETH MILLS v. H. R. THORNE AND WIFE.

*Rule in Shelly's Case— Wills.*

1. *Quære,* whether the rule in Shelly's Case has been abrogated in this State by statute.

2. In this State, when an estate is settled on the ancestor, with remainder to his heirs, " equally to be divided among them," or " share and share alike," the addition of these words prevents the application of the rule in Shelly's case, and the heirs take as purchasers.

3. Since the act of 1784, words in a will which would give the absolute property, if bequeathing chattels, will give a fee if used in a devise of lands, the effect of the statute being to put chattels on the same footing as land, and to make the same rule applicable to both.

4. A bequest of chattels to A for life, and at his death to be equally divided between his heirs, vests only a life estate in A in the chattels, with a remainder to his heirs, as tenants in common.

5. Where land is devised to the ancestor for life, with a limitation that the remainder is to be equally divided among his heirs, or the heirs of his body, or his issue, the remainder men take as tenants in common, *per capita* and not *per stirpes,* and they take as purchasers.

(*Ward* v. *Jones,* 5 Ired., Eq., 400 ; *Swain* v. *Rascoe,* 3 Ired., 200, cited and approved.)

This was a CIVIL ACTION, tried before *Philips, Judge,* at the Fall Term, 1886, of WILSON Superior Court, upon the following case agreed:

Gray Lodge, of the county of Wilson, died in January, 1881, leaving a last will and testament, dated November 3d, 1866, which was duly proven and admitted to probate, that portion of said will which is material to this cause being in these words: " After all my just debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath and dispose of as follows, to-wit: To my beloved wife, all the land I now possess, known as the Odom tract of land, lying on Frank's branch, adjoining the lands of Benjamin Simpson and Bartley Deans and others, together with all my stock and other property of anything whatsoever, as I am now possessed of, during her life time, and after her death, for my sister, Prissy Little, her or her heirs, to share and share equally with my wife's heirs."

One child was born to Gray and Rebecca Lodge, who died during the late war, leaving no issue.

At the date of Gray Lodge's will, he was sixty years old, Rebecca, his wife, fifty years old. Prissy Little is now living. Rebecca Lodge, wife of Gray Lodge, died in the month of January, 1885, devising all her estate of every description to Louisa Shavers, now Louisa Thorne, wife of H. R. Thorne, and defendant in this action, who together with her said husband, H. R. Thorne, under said devise, took possession of the said Odom tract of land bequeathed by the aforesaid Gray Lodge as aforesaid, and are now in possession of the same.

Elizabeth Mills and Ann Smith, together with others, are the lawful heirs of Rebecca Lodge.

If from this statement of facts, the Court shall find that Rebecca Lodge had an estate for life only in said land, it is agreed that the plaintiffs have judgment for possession of same with damages. But if the Court shall find that Rebecca Lodge had an estate in fee simple in said land, or one-half

thereof, then the defendants to have judgment against plaintiffs for costs in this action.

His Honor gave judgment in favor of the defendants.

From this judgment the plaintiffs appealed.

*Mr. John Devereux, Jr.*, for the plaintiffs.
*Mr. John F. Bruton*, for the defendants.

ASHE, J. (after stating the facts).  The question to be decided in this case is, whether the rule in Shelly's case applies. The rule is : "That when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance, an estate is limited, either mediately or immediately to his heirs in fee or in *tail*, the word heirs are words of limitation of the estate, and not words of purchase." 1 *Coke*, 104.  Without deciding the question whether the rule has been abolished by statute in this State, if we should consider the case solely in view of English adjudications, we would unhesitatingly hold that it did apply.  In England, ever since the leading case of *Jepson* v. *Wright*, 2 Bligh., 1, it has been held, that the words "equally to be divided," or "share and share alike," superadded to limitations to the heirs of the body, &c., do not prevent the application of the rule. But in this State, it would seem that the superaddition of like words to the limitation to the heirs, or heirs of the body, or issue, do prevent the application of the rule.

In *Ward* v. *Jones*, 5 Ired. Eq., 400, the devise, (since the act of 1784), was to A for life, and should he have lawful issue, then to be equally divided between his lawful issue, but should he not have lawful issue, then, it was held, that A took only a life estate in the land.  PEARSON, J., who delivered the opinion of the Court, said : "The will in the case under consideration, was made in the year 1778, and unless the acts of 1784 alter the law, it is clear that A took an estate tail, which by the act of 1784, ch. 204, was converted into a

fee-simple. We think the acts of 1784 do alter the law, and that in all devises of land, made since that time, the words '*to be equally divided*,' prevent the application of the rule in Shelly's case, and the first taker has only an estate for life." He proceeds to say : " The rule in Shelly's case only applies when *the same persons* will take the same estate, whether they take by descent or purchase, in which case they are made to take by descent, it being more favorable to dower, to the feudal incidents of seignories, and to the right of creditors, that the first taker should have an estate of inheritance ; but when the person taking by purchase would be different, or would have different estates, than they would take by descent from the first taker, and the rule does not apply, and the first taker is confined to an estate for life, and the heirs, heirs of the body, or issue in wills, take as purchasers. The words, '*to be equally divided between the issue*,' include different persons than simply the word *issue* when used as a word of descent. For in the latter case, the person or persons to take, would be ascertained by the rules of descent, there would be representation, and the taking would be *per stirpes ;* while in the former, the rules of descent would have no application, and there must be an equal division *per capita*. Hence, the use of these words prevents the application of the rule."

It will be perceived that his Honor makes no distinction between the limitation to *heirs, heirs of the body*, and *issue*. But whenever the words "*equally to be divided*" are superadded, it prevents the application of the rule, for the reason given, that the issue or heirs, take *per capita*, that is, as tenants in common, and not as heirs in a line of succession. It is true, in our case, the words are, "to share and share equally," but they are words of similar import. In *Theobald's Law of Wills*, p. 320, it is laid down that words of division or distribution, such as " to be divided," or " equally," or " between,' or " amongst," or " share," or similar words, make a tenancy in common. This would seem to be a controlling authority

for holding that the words "share" and "to share equally," as used in the will in this case, had the effect to prevent the application of the rule in Shelly's case. But the learned Chief Justice, in further pursuing the subject in that case, held that the act of 1784 had also an important bearing on the question. He argued, that in a bequest of chattels, words which would create an estate tail in land devised, the same words give an absolute estate, and before the act of 1874 the same words that gave an absolute estate in chattels, gave an estate tail in lands, but since the act of 1784, lands cannot be entailed, and the words which before gave but an estate tail, after that gave an estate in fee simple, or an absolute estate. So that now, the same words give an absolute estate in lands, that would give an absolute estate in chattels. Hence, the effect of the act of 1784 has been, to put lands on the same footing with chattels, and the same rule is applicable. But in bequests of chattels, the words *to be equally divided between the issue,* make an exception to the general rule, and prevent the vesting of an absolute estate in the first taker, "it being inferred from these words, that the testator could not intend that the issue should take as issue, but that they should take distributively as *purchasers,* so as to give the first taker an estate for life, and then to the issue as tenants in common. To support the position, he cited the case of *Swain* v. *Rascoe,* 3 Ired., 200, where it was held, that a bequest of personal property to A for life, and at his death, if he should die leaving heirs lawfully begotten of his body, that the said property should be equally divided between them, was a limitation for life only to A, with remainder to his children as tenants in common. Judge Daniel spoke for the Court in the case, and cited numerous English decisions in support of the opinion.

It would seem then to follow as a corollary, that like words of distribution used in a devise of land would have the effect of creating a tenancy in common, or a distribution *per capita* among the heirs, heirs of the body, or issue of a life tenant.

In England, ever since the decision in *Perren* v. *Blake*, decided in the Exchequer Chamber, and reported in 4 Burr, 2579, the rule in question has been regarded as one of the most firmly established rules of property, and it has been strictly maintained by all her courts; but in the United States, the leaning of our courts and legislatures has been against the rule, and in many of the States the rule has been abolished. .

In *Prescott* v. *Prescott*, 10 B. Mon., 56, MARSHALL, C. J., said: " It is true, the words 'heirs of the body,' are appropriate words of limitation, and commonly and properly used for the creation of an estate tail, which is an estate to a person, and the heirs (general or special) of his body. But it is also well settled by numerous decisions, that not only heirs of the body, but the more general word 'heirs,' or the more specific terms 'heirs male, or heirs female of the body,' or of ' two bodies,' may be used and operate as words of purchase. It is a question of intention whether these words are used to denote the whole line of heirs of the sort described to take in succession as such heirs, or to denote only a particular person, or a class of persons who are to come under that description at the time. When used in the former sense, they are words of limitation, defining or limiting the previous estate to which they apply. When used in the latter sense, they operate merely as *designatio personæ*, or *personarum*, and are held to be words of purchase, giving a new estate to the persons designated."

The consideration we have given the question leads us to the conclusion that the rule in Shelly's case does not apply to this case; that the words "*to share and share equally,*" indicate an intention on the part of the testator to give the property to his sister Prissy or her heirs, and the heirs of his wife, to be divided between them as tenants in common, the sister to take one moiety, and the heirs of his wife the other moiety, to be distributed *per capita* between such persons as

may bring themselves under that description when the life estate terminated, and that the words *heirs* of his wife, were used not in a technical sense, but as *designatio personarum*.

There is error. Let this be certified to the superior court of Wilson county, that a *venire de novo* may be awarded.

Error.                                                    Reversed.