W. R. HOWELL and others v. MARY A. KNIGHT.

*Rule in Shelley's Case*—§ 1329, *The Code*—*Construction of Will.*

1. Ch. 43, § 5, Rev. Code—§ 1329, *The Code*—may have the effect of abolishing the rule in Shelley's case, in the contruction of instruments executed since January 1st, 1856.

2. The rule in Shelley's case prevails only where the words "heirs, or heirs of the body" of the tenant for life, to whom the estate in remainder is limited, are simply used; but it yields to an intention manifested in the context, or gathered from other provisions of the instrument.

3. A devise, as follows: "I *lend* to A., and if he hath a lawful heir begotten of his body at his death, I *give* it to said heir or heirs; and if he dies without an heir as aforesaid, I lend it to B.," repeating a similar *gift* to the heir or heirs of B., if he should have such living at his death, creates an estate for life only in A., and the rule in Shelley's case does not apply.

CIVIL ACTION—Ejectment—tried before *Avery, J.,* at Fall Term, 1887, of EDGECOMBE Superior Court.

Judgment was rendered for the plaintiffs; defendant appealed.

The facts appear in the opinion.

*Mr. John Devereux, Jr., (Messrs. Gilliam & Son* filed a brief,) for the plaintiffs.

No counsel for the defendant.

SMITH, C. J.   The controversy is in respect to the proper construction of a clause in the will of James Knight, made in July, 1844, and proved after his death in November, 1847. The facts are stated in a case agreed and submitted under section 567 of *The Code*.   The plaintiffs are the children and, as such, the heirs at law of James W. Knight, the devisee named in the fourth item of the will, the meaning and legal effect of which is in dispute, who died intestate in 1875. The defendant, his widow, claims an estate in fee by virtue of a sale of the interest in the land devised, under execution against her husband, made in his life-time by the Sheriff, to her as purchaser, and his deed of conveyance therefor.   It is agreed that if, under the aforesaid item or clause of the will, the devisee, James W. Knight, took an estate for life only, judgment shall be rendered for the plaintiffs, but if an estate in fee vested in him thereby, judgment shall be for defendant.

The fourth item is in these words:

" I lend unto my son James W. Knight all my land after the death of his mother, and if he hath a lawful heir begotten of his body at his death, I give it to said heir or heirs; and if he dies without an heir as aforesaid, I lend it to Virginia Staton, William Ann Staton and Simmons B. D. Staton, and if Virginia Staton hath an heir lawfully begotten of her body at her death, I give her share to said heir or heirs; and if not, I lend her share to William Ann Staton and Simmons B. D. Staton, and if William Ann Staton hath an heir or heirs at her death lawfully begotten of her body, I give her share of said land to said heir or heirs; but if she dies without heirs as aforesaid, I lend her part to Virginia Staton and Simmons B. D. Staton; and if Simmons B. D. Staton hath an heir or heirs lawfully begotten of his body at his death, I give his share to said heir or heirs, but if he dies without an heir or heirs as aforesaid, I lend his share to Virginia Staton and William Ann Staton; and if all of them

die without an heir as aforesaid, then I give said land to the two eldest sons of Lunsford R. Cherry, of said county."

The following is the judgment rendered :

This cause coming on to be heard before me at Fall Term, 1887, of Edgecombe Superior Court, upon the foregoing statements of facts submitted as a controversy without action, it is adjudged that plaintiffs recover possession of the land sued for and the costs of this action, from which judgment the defendant prays an appeal to the Supreme Court.

Exception by the defendant that the Rule in Shelley's case applies ; that by the will of James Knight the absolute estate in the land sued for passed to James W. Knight.

From this ruling, the subject-matter of exception, and the judgment consequent thereon, as error assigned, the defendant appeals and brings up for determination the principle known as "the Rule in Shelley's case," to the facts of the present case, in interpreting the testator's will. The Rule in Shelley's case has long been recognized as in force in this State, and even so late as the year 1881, in *King* v. *Utley*, 85 N. C., 59, in its application to wills and deeds made previous to the enactment introduced into the Revised Code, ch. 43, § 5. This act declares, that the limitation in any writing " to the heirs of a living person shall be construed to be to the children of such person," unless a contrary intention be apparent in the instrument, and this change, in the interpretation of the technical words in common use, corresponding with the evident intention of the person employing them, may have the effect of abolishing the Rule, as so many of the States have already done. Wash. Real Estate, note 5, at page 563, in the construction of such phraseology found in the writings executed since January 1, 1856, when that Code went into effect.

The will before us is not affected by this statute, as the testator died before that date, and the clause in dispute must be interpreted in the light of antecedent adjudications by

which the law in force at the time of its execution is established. The rule, however, is not an inflexible one, for it prevails only where the words " heirs or heirs of the body " of the tenant for life, to whom the estate in remainder is limited, are simply used, while the construction yields to an intent manifested in the context or gathered from other provisions of the instrument, that persons answering the description should take the inheritance as a gift.

Thus, the superadded words, " equally to be divided between them," or " share and share alike," have been held to prevent the application of the rule of construction, since they require a division *per capita* among the donees of the remainder, while under the law of descent, the heirs take *per stirpes* and representatively, and, to give the rule operation, in the language of the late Chief Justice, " the same persons will take the same estate, whether they take by descent or purchase, in which case they take by descent." *Ward* v. *Jones*, 5 Ired. Eq., 400, and *Mills* v. *Thorne*, 95 N. C., 362.

So, as the predominant and controlling purpose of the testator must prevail, when ascertained from the general provisions of the will, over particular and apparently inconsistent expressions, to which, unexplained, a technical force is given, we may inquire and find out in what sense such expressions were used, and what the testator meant in using them.

Now, examining the will according to this test, we think it quite manifest the terms ʼheir," " heirs," " lawful heir begotten of his body," were employed not to designate the estate, but the person to take it, the children of the devisee to whom the immediately preceding life estate is limited ; in other words, a *designatio personarum*. The considerations which support this view will be briefly mentioned :

1. The testator uses one word when giving a limited or life estate to a donee, and another and different word when giving an absolute estate, or remainder in fee; and this dis-

100—17

tinction is carefully maintained throughout the entire clause, as well as in subsequent clauses where similar limitations are found. Thus he says: "I *lend* unto my son James," and "if he hath a lawful heir, begotten of his body at his death, I *give* it to said heir" or "heirs;" if he die without such, "I lend it to Virginia Staton" and others, and upon similar contingency "I *give* her share," &c.; and if she die without such heir, I *lend* her share to William Ann Staton, &c., and at her death, "I *give* the share to her heir or heirs," and so on to the end of the clause. Studiously throughout the will, in the disposition alike of real and personal estate, this phraseology is preserved, the word "*lend*" being used to indicate the nature and extent of the donation, when the estate or property is to be limited, implying a reservation in the donor, as in a strict sense the word means; and when the absolute property is to be parted with, it is given to the ulterior donee. This distinctly marks the differences in the devises and an intent which can only be fulfilled by giving a meaning to the term "heir," which confines it to a child or children; a sense in which it is generally understood in popular use. *Payne* v. *Sale*, 2 Dev. & Bat. Eq., 455; opinion of GASTON, J.

2. The expression, "if he have a lawful heir, begotten of his body, at his death," most clearly points to personal offspring, which must be a "lawful," as distinguished from an "illegitimate" child. There can be no such thing as an *unlawful* heir, for it is by virtue of the law, that one bears that relation to the estate of an intestate, and the absurdity vanishes when the qualification is attached to a child.

3. The term throughout the will, for it is constantly used, must bear this construction, to give full scope and efficacy to the successive limitations, and unless it is given, the will must utterly fail to carry out the testator's obvious purposes.

With this manifestation of an intent predominating in the will, the rule in Shelley's case must be subservient, and the

rule itself admits an exception, from its operation under such circumstances.

We do not subvert a principle which has long been a rule of property in this State, as well as in England, and under which have vested rights we would be unwilling to disturb; and the General Assembly alone can repudiate it, if unjust in its operation, if this has not already been done as to wills or deeds made after an abolishing enactment.

There is no error, and the judgment must be affirmed.

No error.                                 Affirmed.