## WOOL v. FLEETWOOD.

(Filed November 15, 1904).

1. PERPETUITIES—*Wills—Alienation—Estates.*

> A will providing for a life estate in realty and that it shall not be sold during the life of the life tenant is void as against public policy.

2. WILLS—*Estates—Remainders—Descent and Distribution.*

> Where a testator devises land to a person for life and at her death to be managed for five years by an administrator, and at the expiration of the five years to go to the remaindermen, the remaindermen take a vested estate immediately on the death of the life tenant.

3. WILLS—*Remainders—The Code, sec 1325.*

> Where land is devised to a person for life and at her death to vest in the children of the testator during their natural lives and at their death to vest in their lawful heirs, such children take a fee on the death of the life tenant.

WOOL *v.* FLEETWOOD.

4. SPECIFIC PERFORMANCE—*Wills—Estates—Remainders.*

> In this action for specific performance under a will herein set out
> the life tenant and the two remaindermen may convey a fee-
> simple estate.

ACTION by Elizabeth A. Wool and others against J. J. Fleetwood, heard by *Judge George H. Brown,* at March Term, 1904, of the Superior Court of PERQUIMANS County.

This is a controversy submitted without action in which the plaintiffs seek specific performance of a contract with the defendant by which they undertook and agreed to sell and the defendant to buy one hundred and twenty-five acres of land known as the "Saunders tract." The land originally belonged to Jacob Wool, who devised it to the plaintiffs in the manner set forth in his will, the material items of which are as follows:

3. "I give, devise and bequeath my estate and property, real and personal, unto my wife Elizabeth Arnold Wool, the same to be held by her during her natural life and the income from said property shall go to her for her support."

4. "I do hereby constitute and appoint my said wife Elizabeth Arnold Wool my sole executrix of this my last will and testament, without bond, to settle my estate."

5. "I order and direct that none of my real estate be sold by my wife or by my heirs or disposed of in any way during her natural life."

6. "I order and direct that my estate remain in the name of Jacob Wool's estate five years after the death of my wife Elizabeth A. Wool, and at her death the surviving heirs shall select an administrator who shall qualify according to law and shall manage the estate and make a settlement with the heirs, once a year, of all money he has on hand to their credit; upon a failure to do so the heirs may select another administrator if they deem it necessary."

7. "I order and direct that at the expiration of five years after the death of my wife Elizabeth A. Wool, my son Leonard Jackson Wool and Elizabeth shall select three commissioners and make an equal division of my estate between themselves, Leonard Jackson and Elizabeth Wool, who shall own and occupy said property during their natural lives, and at the death of Leonard Jackson and Elizabeth Wool the property shall go to their lawful heirs, and should they have no surviving heirs the property shall go to my lawful heirs."

8. "I order and direct that the administrator shall receive as compensation for his services one and one-fourth per cent. for receiving, and one and one-fourth per cent. for disbursing whatever money may come in hand belonging to my estate."

The devisees all survived the testator, are plaintiffs in this controversy and are of full age, unmarried and without any children. The executrix, Elizabeth A. Wool, qualified as such and has fully settled the estate of her testator. Prior to the 15th day of June the defendant duly contracted with the plaintiffs to purchase of them the tract of land herein first described in fee-simple at the sum of $1,200 and the plaintiffs contracted to convey to him a good and indefeasible title in fee to the same, and before the commencement of this action the plaintiffs, Elizabeth A. Wool, Leonard J. Wool and Elizabeth Wool, executed and duly tendered to the defendant J. J. Fleetwood a deed in fee-simple with warranty, conveying to him in terms the tract of land aforesaid, and demanded of him the purchase-money which he had agreed to pay for the same. The defendant Fleetwood refused to accept the deed or to pay the purchase-money, upon the ground only that by the terms of the will of Jacob Wool the plaintiffs could not convey a good and indefeasible title to the land.

It was agreed between the parties that if, under and by virtue of the will, the plaintiffs had the legal right to convey the

land to the defendant, and did by the deed tendered convey
a good and indefeasible estate in fee to him, then judgment
should be entered requiring him to comply with his said con-
tract by accepting the said deed and by paying over the
money which he had contracted to pay. But if the Court
should be of the opinion that the plaintiffs are unable to con-
vey, by virtue of the will and deed, a good and indefeasible
fee-simple title to the land in controversy, then the defend-
ant should go without day. Upon consideration of the facts
agreed the Court held that the plaintiffs had the legal right
to convey and make a good and indefeasible title to the land
described in the contract, and thereupon adjudged that, upon
the plaintiffs tendering to the defendant a deed in due form
with a covenant of warranty for the land and with proper
probate, they recover of the defendant the amount of the pur-
chase price ($1,200) and the costs. The defendant excepted
to this judgment and appealed.

*Pruden & Pruden,* for the plaintiffs.
*Charles Whedbee,* for the defendant.

WALKER, J., after stating the facts. We do not see why
the plaintiffs are not able by the deed which they have ten-
dered to convey a good and indefeasible title to the defend-
ant. The latter contends, as we understand, that the deed
will not pass to him such a title for three reasons: (1) be-
cause by the fifth item of the will the widow and the heirs
are forbidden to sell or dispose of any of the real estate dur-
ing the life of the former; (2) because by the terms of the
sixth item no estate vested in the plaintiffs, Leonard and
Elizabeth Wool, either by descent or purchase, until the ex-
piration of five years after the devisor's death, and (3) be-
cause by the seventh item the said Leonard and Elizabeth did
not acquire the fee, but only a life estate, the word "lawful"

which qualifies the word "heirs" having the effect in law of
preventing the latter word from operating as one of limita-
tion and of restricting the meaning of the words "lawful
heirs" to that of "children" who will take,. not by descent
from their parents but by purchase directly from the devisor,
and, therefore, that the rule in Shelley's case and The Code,
sec. 1325, converting fees tail into fees-simple, do not apply.

It is true that the testator places a positive restraint upon
the alienation of the real property in the fifth item of his
will, and the plaintiffs by reason of that restriction cannot
convey a good title to the defendant if that provision of the
will is valid. We entertain no doubt upon the question thus
presented, as it is well settled that such a restraint upon the
donee's right to dispose of the property is void as being con-
trary to a wise principle of the law which is based upon a
sound public policy. As a general rule it may be conceded
that every person may do with his own as he pleases; but
this rule is not of universal application, but is subject to
some exceptions made necessary by the interest of the public
that the titles to land should be as little fettered and the
power of alienation as little subject to restraint as possible
and consistent with a reasonable enjoyment of the right of
property and all of its incidents—it being, generally speak-
ing, against public policy to allow restraints to be put upon
transfers which that public policy does not forbid. Gray
Restraint on Alienation (2 Ed.), sec. 3. Hence it has ever
been the inclination of the courts in their decisions to remove
old restraints and not only to discountenance but to disallow
new ones, and to put all obstacles out of the way of a fair
and reasonable exercise of this power of alienation, which is
one of the most important and valuable incidents of the right
of property. While limited restraints of a certain kind have
been recognized as valid when the fee is conveyed, it must
be conceded at this time to be well settled that a restraint

upon the right of alienation even for a limited period of time is, as to such an estate, invalid—it being inconsistent with the nature of the grant or of the estate which is created by the latter. Gray, *supra,* 41. The elementary law writers (2 Blk., 157) lay down the rule generally that a condition of non-alienation annexed to a conveyance *inter vivos,* or to a devise of a fee, is void, because it is inconsistent with the full and free enjoyment which the ownership of such an estate implies. *Twitty v. Camp,* 62 N. C., 61. "The doctrine," says *Ruffin, C. J.,* speaking for the Court, "rests upon these considerations that a gift of the legal property in a thing includes the *jus disponendi* and that a restriction on that right, as a condition, is repugnant to the grant and therefore void." *Mebane v. Mebane,* 39 N. C., 131, 44 Am. Dec., 102.

The statute, *Quia Emptores,* 18 Edw. I., chap. 1 (1290), abolished subinfeudation and by virtue of its provisions all persons, except the King's tenants *in capite,* were left at liberty to alien all or any part of their lands at their own pleasure and discretion (2 Blk., 289), and finally restrictions in cases of freehold tenure were entirely removed by 12 Car. II., chap. 34, and ever since those statutes were passed the right of free and unlimited alienation has been regarded as an inseparable incident to an estate in fee. 1 Wash. R. P. (5 Ed.), p. 83; *Hardy v. Galloway,* 111 N. C., 519, 32 Am. St. Rep., 828. It cannot be questioned that a condition of non-alienation annexed to the grant of an estate in fee is void, though confined in its operation to a limited period of time. Gray, sec. 54. "The capricious regulations which individuals would fain impose on the enjoyment and disposal of property must yield to the fixed rules, which have been prescribed by the supreme power as essential to the useful existence of property." *Dick v. Pitchford,* 21 N. C., 484; *Pritchard v. Bailey,* 113 N. C., 521; *Lattimer v. Waddell,*

136——30

119 N. C., 370; *School v. Kesler,* 67 N. C., at p. 447; Coke, sec. 362.

We think it is equally well settled, at least in this State, that such a condition annexed to the grant or devise of an estate for life is also void, both as to legal and equitable estates. In *Dick v. Pitchford, supra, Gaston, J.,* for the Court, says: "The deed does not provide that in the event of the life tenant attempting to sell or dispose of the [rents and profits] or otherwise to anticipate the receipt thereof, that they shall then go over and be paid to some other person; it secures to him, at all events, the enjoyment of the property for life, and prohibits him from transferring it or anticipating its profits.   Now the general right of the giver of property to prescribe the modifications of his gift is subject to the condition that these modifications be not contrary to law nor repugnant to the nature of the conveyance, nor incompatible with the legal incidents belonging to the disposition he has made.   The power of alienation is a legal incident to ownership.   It is familiar doctrine that if a feoffment, grant, release, confirmation or devise be made 'upon condition not to alien the estate, or if a term for years or chattel personal be granted upon condition not to assign, such conditions are altogether nugatory.   The doctrine obtains not less in courts of equity, acting upon those interests which are the proper subject-matter of their jurisdiction, than in courts of law adjudicating upon legal interests.   A departure from it would introduce endless confusion and innumerable mischiefs." Gray, sec. 134; 24 A. & E. Ency., p. 870.

A distinction is sometimes to be found in the cases between a condition against alienation or anticipation, coupled with a provision that the life tenant and his assigns shall lose the estate if the condition is broken and that it shall go over (which makes it a limitation), and one by which he is compelled to keep the property so that neither his grantees nor

any third person can get hold of or enjoy it, the latter condition being declared as void and the former as valid. We need not pass upon this distinction as there is no limitation over in this case.

The next objection to the title is equally untenable. It will be observed on reading the sixth item of the will that, while the testator provides that his surviving heirs shall appoint an administrator, he does not devise any estate to the appointee, but directs that the "estate" shall remain "in the name of Jacob Wool's estate." There can be no doubt that there is nothing in this item to interrupt the immediate descent of the land to the heirs and they consequently became seized by descent of an estate in remainder, which was vested in interest though not in possession—a vested remainder after the life estate of their mother. *Ferebee v. Procter,* 19 N. C., 439; *Beam v. Jennings,* 89 N. C., 451; *Munds v. Cassidey,* 98 N. C., 558; *Gay v. Grant,* 101 N. C., 206. As the case shows that the executrix had fully administered and there was no necessity for the appointment of an administrator with the will annexed, and as an administrator has nothing to do with the land except for the purpose of selling it and paying debts under a power given by the will or by the statute, we do not see how this provision can be executed, and if we construe the item to mean that they shall select an administrator, or a trustee who is called an administrator, and that he shall take either a freehold or a chattel interest (*Trodd v. Downs,* 2 Atkyn's Rep., 304; *Goodlittle ex d. Haywood v. Whilby,* 1 Burr, 288) for the purpose of performing the trust (Saunders on Uses and Trusts, 2 Am. Ed., pp. 253-257), which trust is special and therefore not executed by the statute of uses (Saunders, pp. 2-4), we yet do not see why, if the defendants accept the deed of the plaintiff, the latter will not be estopped by their deed or rebutted by their warranty to ever hereafter assert any right or title under

that item of the will, or to avail themselves thereof in any way, and this will equally follow as a result if the provision is regarded as one for the appointment of an administrator, and as such is valid. Especially will this be the case if the deed contains covenants of seizin, for quiet enjoyment and against incumbrances (*Hallyburton v. Slagle,* 132 N. C., 947; *Taylor v. Shufford,* 11 N. C., 116, 15 Am. Dec., 512; Bigelow on Estoppel (5 Ed.), pp. 440-446), and if in the premises and *habendum* the land, as well as its rents, issues and profits, is conveyed. A copy of the deed should have been inserted in the transcript as we are asked to decide whether it will convey a good and indefeasible title, and we should see it before finally determining what its effect will be; but as there is no copy we must assume from what is said in the case that it is in proper form to transfer the land and everything connected therewith in which the plaintiffs have any interest under the will—the question submitted to us involving merely the ability of the plaintiffs to pass a good title by their deed to what they acquired by the will.

The third objection to the title of the plaintiffs cannot be sustained. By the sixth item of the will a life estate was given to the widow, and the remainder in fee descended to the heirs, Leonard and Elizabeth, who by the terms of the seventh item are to make partition of the land at the expiration of five years from the death of the life tenant. The provision in the seventh item that Leonard and Elizabeth shall own and occupy the property during their natural lives and at their death it shall go to their lawful heirs, and should they have no lawful surviving heirs it shall go to the testator's lawful heirs, does not change the quantity of their interests or convert their fee into an estate for their lives with remainder to their children. There can be no such thing as an unlawful heir. The term "lawful heirs" means the heirs designated by the law to take from their ancestor, and it can-

not be construed as meaning the children of the first taker.
It follows that by that item of the will an estate of freehold
is given to the ancestors, Leonard and Elizabeth, and after-
wards by the same instrument there is a limitation by way of
remainder to their heirs generally, as a class, to take in suc-
cession as heirs to them.   The case therefore falls directly
within the rule in Shelley's case, the word "heirs" being
one of limitation, and the estate is vested absolutely in the
ancestors.   *Ham v. Ham,* 21 N. C., 598; *Donnell v. Mateer,*
40 N. C., 7; *Worrell v. Vinson,* 50 N. C., 91; *Sanderlin v.
Deford,* 47 N. C., 74.

This rule is of very ancient origin and has always been
considered as a rule of law or of property, and not merely
as a rule of construction adopted for the purpose of ascertain-
ing the actual intention of the testator.   When the words em-
ployed bring the case within the rule, the intention of the
testator is not to be considered, even though he should de-
clare that the ancestor shall only have a life estate.   The rule
is imperative and must be enforced inflexibly in all cases to
which by the term of the particular instrument it is applica-
ble.   25 A. & E. Ency., 640.   If there is anything in the
instrument to indicate clearly an intention not to use the
words in their technical sense, but as *descriptio personarum,*
as, for instance, that by the words "heirs of the body" the
testator meant children, such an interpretation will be given
to his language as will effectuate his intention.   "As the law
will not entrap men by words incautiously used, if in the limi-
tation of a remainder by any instrument of conveyance the
phrase "heirs" or "heirs of the body" be expressed, but it is
unequivocally seen that the limitation is not made to them in
that character, but simply as a number or class of individuals
thus attempted to be described, then the whole force of the
phrase is restricted to this designation or description—it shall
have the same operation as the words would have of which

it is the representative; there is not in fact a limitation to 'heirs' and of course there is no room for the application of the rule." *Allen v. Pass,* 20 N. C., 77.

This Court has said that the rule in Shelley's case applies only when the same persons will take the same estate whether they take by descent or purchase, in which case they are made to take by descent, as it is more favorable to the donee, to the feudal incidents of seignories, to the rights of creditors, and for other reasons, that the first taker should have an estate of inheritance, but when the persons taking by purchase would be different or have other estates than they would take by descent from the first taker the rule does not apply, and the first taker is confined to an estate for life, and the heirs, heirs of the body, or issue in wills, will take as purchasers. *Ward v. Jones,* 40 N. C., 400; *Mills v. Thorne,* 95 N. C., 362; *Howell v. Knight,* 100 N. C., 254. In *Allen v. Pass,* 20 N. C., at p. 81, the same idea is thus expressed: "Before the application of the rule in Shelley's case it is always proper first to ascertain whether, on the true interpretation of the words of the gift, there is a limitation of the inheritance in remainder to the heirs or to the heirs of the body of one to whom the precedent freehold is given—such limitation does exist when the gift is to them in the quality of heirs—embracing the same number in succession of objects and conferring the same extent of interest as would be embraced and conferred where the inheritance has been limited to the ancestor."

The word lawful is not sufficient *per se* to show an intention not to use the word "heirs" in its ordinary legal sense as a word of inheritance or of limitation, and we must therefore hold that Leonard and Elizabeth, under the seventh, if not under the sixth, item of the will, took an estate in fee. *Cooper, ex parte,* 136 N. C., 130, and *Britt v. Lumber Co.,* 136 N. C., 171.

The defendant's counsel in his brief contends that the rule in Shelley's case does not apply, and relies upon *Rollins v. Keel,* 115 N. C., 68; *Knight v. Howell,* 100 N. C., 254; *Mills v. Thorne,* 95 N. C., 362, and *Bird v. Gillam,* 121 N. C., 326, but in each of those cases the language of the will was different from that used in this will, and there were special circumstances which prevented the application of the rule. The case of *Patrick v. Morehead,* 85 N. C., 62, 39 Am. Rep., 684, which is cited with approval by the Court in *Rollins v. Keel,* is a direct authority for the construction we have placed upon this item of the will with respect to the operation of the rule in Shelley's case. The subject is discussed by *Ashe, J.,* at p. 67.

It is not suggested in the briefs of counsel that the limitation over to the "lawful heirs" of the testator upon the death of Leonard and Elizabeth without leaving heirs renders their estate a fee contingent or defeasible. We have, however, considered the question and have reached the conclusion that it does not. The heirs of Leonard and Elizabeth will not necessarily be the heirs of the testator, as they may have heirs on the maternal side; but the converse is not true, as the heirs of the testator must of necessity be the heirs of his children. It therefore follows that if at the death of Leonard and Elizabeth there be any persons living who are the heirs of the testator they will also be their heirs, and this will of course destroy the ulterior limitation, for it is not to take effect by the terms of the devise if Leonard and Elizabeth die leaving heirs.

If the parties were reversed and we were called upon to decide whether the defendants in this case are entitled to specific performance, the relief would be denied, as the granting it is a matter of sound judicial discretion, controlled, it is true, by established principles of equity, but exercised only upon a consideration of all the circumstances of each

particular case (Pomeroy Contr., Spe. Perf., sec. 35), and, as a conveyance by the present plaintiffs, Leonard and Elizabeth, would tend to defeat the intention of the testator as manifested in item six of the will, this consideration alone would be sufficient to induce the Court to withhold its aid. And a like result would follow if the plaintiffs in this case were seeking to compel the defendants against their will to comply with the contract, for the same consideration would arise. The question, though, is not presented in either of these ways. The defendant is willing to take the title upon our declaration that it will at least be good in them by reason of the estoppel or rebutter arising out of the plaintiffs' deed or warranty, and we so decide. This affirms the judgment below.

Affirmed.