AMERICAN TRUST COMPANY, COMMISSIONER, v. W. L. NICHOLSON.

(Filed 13 May, 1913.)

1. Estates—Deeds and Conveyances—Trusts and Trustees—Sales— Proceeds Held in Trust—Equity.

Where an estate is granted for life, then to the children of the first taker, the children of such of them as may then be dead taking *per stirpes*, in trust to be held until the youngest child of the tenant for life shall become 21 years·old, after the death of the first taker, all the parties at interest being before the court, equity may decree a sale, subjecting the proceeds in the hands of the trustee to the conditions originally imposed, and the purchaser will acquire a perfect title. *Springs v. Scott*, 132 N. C., 563, cited and applied.

2. Estates—Deeds and Conveyances—Restraint Upon Alienation— Sales—Proceeds—Trusts and Trustees—Partition.

An estate in remainder, with the provision "that no partition of said land or sale thereof shall be made by any" of the remaindermen until· the youngest child of the tenant for life "shall arrive at the age of 21 years": *Held*, that part of the provision prohibiting a sale, regarded as a restraint upon alienating, is void; nor is that part which prohibits a partition of the lands violated by a decree of court for a sale which further orders that the trustee retain the whole proceeds, subject to the terms and conditions of the written instrument, for reinvestment.

3. Estates in Remainder — Deeds and Conveyances — Trusts and Trustees — Changed Conditions — Hardship on Beneficiaries— Equity.

Where the donor has created an estate in remainder for the benefit of his grandchildren, etc., to be held in trust until the

162—17

youngest one shall have become 21 years of age, and it is made to appear to the court that to preserve the estate in its then condition, owing to changed conditions, would work a hardship upon the beneficiaries, and that to preserve their interest a sale should be decreed and the proceeds invested and held subject to the terms imposed: *Semble,* a court of equity may act accordingly, and the purchaser at the sale will acquire a good title.

APPEAL by defendant from *Webb, J.,* at March Term, 1913, of MECKLENBURG.

This is a controversy submitted without action, for the purpose of determining the validity of the title to real estate contracted to be purchased from the plaintiff by the defendant. It is admitted that the title was good in Andrew J. Dotger and wife, and that if the proceeding in the Superior Court of Mecklenburg County, wherein an order of sale was made by Lyon, judge, at January Term, 1912, appointing the plaintiff a commissioner to sell the land described in the complaint, and the subsequent order in regard to the particular sale in controversy were obtained, is valid, then the title offered defendant by the plaintiff is good and indefeasible.

On 26 April, 1899, A. J. Dotger, who was then the owner of the lands in controversy, and his wife, executed the following paper-writing, which was duly probated and registered:

Whereas I, Andrew J. Dotger, of the aforesaid county and State, am the owner in fee simple of a certain tract of land lying and being in the county of Mecklenburg, State of North Carolina, near the city of Charlotte, containing about 89 acres, and described in a deed made to me by McD. Arledge and wife, which is duly registered in the office of the register of deeds for said county of Mecklenburg, in Book 104, page 122, and in a deed made to me by J. H. and W. R. Wearn, which deed is also duly registered in the office of said register of deeds, in Book 110, page 306, to which two deeds reference is made for a more perfect description of the said tract of land; and whereas, because of my love and affection for my brother, Henry C. Dotger and his wife, Bertha M., and their children, I· desire that they shall have the use and benefit of the said tract of land: Now, in consideration of my love and affection

for them, and of $10 to me in hand paid, I, Andrew J. Dotger, do, covenant with the said Henry C. Dotger and his wife, Bertha M., and their children as follows:

(1) That the said Henry C. Dotger and his wife, Bertha M., and the survivor of them, may occupy and use the said plantation as a home so long as they, or the survivor of them, may elect to live upon the said place and use and occupy it as a home for themselves and their children; and that while they, or the survivor of them, may use and occupy the said plantation as aforesaid, they shall have and hold the same free and clear from any demand for rent on the part of myself, my heirs or assigns; they or the survivor of them paying, when due, all taxes and assessments which may be levied against the said plantation.

(2) Upon the death of Henry C. Dotger and his wife, Bertha M., I covenant and agree that the title to the said plantation shall vest in fee simple in the children of the said Henry C. Dotger and his wife, Bertha M. Dotger, that may then be living, and in the children of any one of their children who may then have died leaving issue; such grandchildren, if any there be, to take *per stirpes* and not per capita: *Provided, however,* that no partition of said land nor any sale thereof shall be made by any of the issue of the said Henry C. Dotger and his wife, Bertha M. Dotger, until the youngest child shall arrive at the age of 21 years, that date being fixed at the time when partition is to be made.

(3) Upon my death, if that should occur before the demise of my said brother and his wife, I covenant and agree that the title to the said land shall vest in the executor of my will, to be held by him upon the same trusts and conditions as I hold the said land under this instrument.

(4) And in the event of the death of my executor before the death of my brother and his wife, then the title to the said land shall vest in my heirs at law, to be held by them upon the trusts and conditions herein set out.

(5) If my said brother and his wife shall elect not to use and occupy the said plantation as a home, and shall signify such election by removing from it, or shall attempt to encumber

it or to assign or mortgage any right which they acquire here-under, then and in that event ·the possession and control of the said plantation shall be reserved by me or by my successor or successors hereunder, and I or they shall collect the rents and profits thereof, and having first paid all taxes and assessments due thereon, and all expenses incurred in the administration of this trust, shall apply the balance of such rents to the support and maintenance of the said family, as the trustees may see· fit to do; and upon·the death of both the said Henry C. Dotger and his wife, Bertha M. Dotger, the possession and control of the said plantation shall immediately pass over to the descend-ants of the said Henry C. Dotger and his wife, Bertha M. Dot-ger, as above provided, who shall then become, by the operation of this instrument, invested with the fee-simple title of the said land, subject only to the limitation aforesaid. And Clara L. Dotger, wife of the said Andrew J. Dotger, joins her husband in the execution of this deed in token of her renunciation of all right of dower in the land above described.

In witness whereof the said Andrew· J. Dotger and wife, Clara L. Dotger, have hereto set their hands and seals, this 26th day of April, 1899.          ANDREW J. DOTGER   [SEAL].
                                        CLARA L. DOTGER    [SEAL].

On ·16 November, 1911, an action was commenced in the Su-perior Court of Mecklenburg County for a sale of said lands or· parts thereof, subject to confirmation by the court, and to reinvest the proceeds of sale.

Henry C. Dotger and wife; all their children, Freda L. Burch, Anna D. Kirby, Bertha C. McLaughlin, F. W. Dotger, and Dorothy F. Dotger; all their grandchildren, Florence E. Burch and Caroline Kirby; the Fidelity Trust Company, ex-ecutor of A. J. Dotger, deceased; Annie C. New, Dora Warner, Elizabeth Wolf, Claire Richards, and Herbert L. Richards, who with the plaintiffs are all the heirs of A. J. Dotger, were parties to said action, and the plaintiffs alleged, among other things, in their complaint:

"That the plaintiffs, Henry C. Dotger and wife, Bertha M. Dotger, have, since the execution of said deed, occupied and

used the lands therein described as a home, and have in every respect complied with all the terms and conditions of said deed.

"That at the time said deed was executed the lands therein described were of small value and were suitable only for agri-cultural purposes; that the city of Charlotte has grown and extended in area until the greater part of said lands are now situated within said city, and all of said lands have become very desirable for residential purposes; that said lands have so increased in value that they are now worth the sum of $100,-000, and are assessed for taxation at the sum of $25,000, which assessment will likely be increased at the next appraisal of property for taxation; that said lands are likely to be sub-jected at any time to assessment· for purposes of public im-provement; and that on account of the high taxes levied against said lands and the assessments to which they may at·any time be subjected, the said lands ·have not only ceased to be profit-able for farming and trucking purposes, but have actually be-come burdensome to plaintiffs.

"That the interest of all parties concerned would be mate-rially enhanced if said lands or parts thereof were sold, and the proceeds reinvested in other estate of a profit-bearing charac-·ter or in the improvement of other real estate or such part of said lands as may not be sold, such newly acquired or improved real estate to be held upon the same contingencies and in like manner as was the property ordered to be sold."

Answers were filed, guardians *ad litem* appointed, and at the hearing the following judgment was rendered· therein at Jan-uary Term, 1912:

This cause coming on to be heard, and being heard upon the pleadings filed in the cause, and it appearing to the court from the pleadings, the affidavits of John F. Orr, Paul Chatham, and N. W. Wallace, and other evidence introduced, that the in-terest of all parties concerned would be materially enhanced if the lands described in the complaint herein filed, or parts hereof, were sold and the proceeds reinvested in other real estate of a profit-bearing character or in the improvement of other real estate or such part of said lands as may not be sold; and it further appearing that the American Trust Company, a

corporation, having its principal office and place of business at Charlotte, N. C., is a suitable entity to act as commissioner for the purpose of making sale of said lands and reinvestment of the, proceeds derived from such sale: .

It is, therefore, upon motion of Morrison & McLain, attorneys for plaintiffs, ordered and adjudged that the American Trust Company be and it is hereby appointed a commissioner, clothed with full power and authority to sell said lands, or any parts or parcels thereof, subject to confirmation by the court, at either public or private sale, and reinvest the proceeds under order of court, after first paying the costs of this proceeding to be taxed by the clerk, in other real estate of a profit-bearing character or in the improvement of such other real estate or such parts of said lands as may not be sold, such newly acquired or improved real estate to be held upon the same contingencies and in like manner as the property ordered to be sold.

And this cause is retained for the further orders of the Court.                                         C. C. LYON,
                                        *Judge Presiding.*

In October, 1912, the commissioner appointed in said judgment reported to the court that the defendant Nicholson had offered $5,000 for $1\,^{87}/_{100}$ acres of said land, upon the terms set out in the report, and at October Term, 1912, of said court said offer was accepted, and the commissioner was directed to execute a deed to the purchaser upon compliance with the terms of the offer.

The commissioner offered to execute a deed in accordance with said last judgment, and the defendant refused to pay the purchase money, alleging that the title was defective, and thereupon the following judgment was rendered:

This cause coming on to be heard, the plaintiff being represented by its attorneys of record, Morrison & McLain, and the defendant his attorneys of record, Stewart & M^cRae, and being heard: It is ordered and adjudged that the title tendered to the defendant by the plaintiff is good and indefeasible, and that the plaintiff is entitled to judgment against the defendant for

the amount of the purchase money upon the execution to the defendant of the deed referred to in the case submitted to the court.                                        JAMES L. WEBB,

*Judge Presiding.*

The defendant excepted and appealed.

*Morrison & McLain for plaintiff.*
*Stewart & McRae for defendant.*

ALLEN, J.  The power of the court to order a sale of the land in controversy, with the parties before it, considered independent of the provision in the declaration of trust, "that no partition of said land nor any sale thereof shall be made by any of the issue of the said Henry C. Dotger and his wife, Bertha M. Dotger, until the youngest child shall arrive at the age of 21 years, that date being fixed as the time when partition is to be made," is settled in *Springs v. Scott,* 132 N. C., 563, where *Justice Connor,* in an elaborate and learned opinion, after reviewing the authorities, says:

"Upon a careful examination of the cases in our own reports and those of other States, we are of the opinion:

"1. That without regard to the act of 1903, the court has the power to order the sale of real estate limited to a tenant for life, with remainder to children or issue, upon failure thereof, over to persons, all or some of whom are not *in esse,* when one of the class being first in remainder after the expiration of the life estate is *in esse* and a party to the proceeding to represent the class, and that upon decree passed, and sale and title made pursuant thereto, the purchaser acquires a perfect title as against all persons *in esse* or *in posse.*

"2. That when the estate is vested in a trustee to preserve contingent remainders and limitations, the court may, upon petition of the life tenant and the trustee, with such of the remaindermen as may be *in esse,* proceed to order the sale and bind all persons either *in esse* or *in posse.*"

Nor do we think the provision quoted prevents the exercise of this power.

If treated as a restraint on alienation, it is void.  *Dick v. Pitchford,* 21 N. C., 480; *Mebane v. Mebane,* 39 N. C., 131;

*Pace v. Pace,* 73 N. C., 119; *Lattimer v. Waddell,* 119 N. C., 370; *Wool v. Fleetwood,* 136 N. C., 465; *Christmas v. Winston,* 152 N. C., 48.

In *Wool v. Fleetwood, supra,* where the subject is fully discussed by *Justice Walker,* it is held, citing *Dick v. Pitchford,* that a condition against alienation annexed to a *life estate* is void; and in *Christmas v. Winston, supra,* citing *Lattimer v. Waddell,* that such a condition, whether annexed to a life estate or a fee, is not made valid because limited to a certain period of time.

The other condition as to partition has not been violated, as no actual partition has been had, and the sale is not for the purpose of dividing the proceeds, which are directed to be held for reinvestment.

It is not necessary for us to decide the question, in the view we have taken of the case, but there is also high authority for the position that conditions like those before us annexed to estates, limiting the powers of trustees or *cestui que trust,* if valid, do not prevent the court of equity from ordering a sale of property contrary to such condition, upon facts like those alleged in the complaint. *Curtis v. Brown,* 29 Ill., 230; *Weld v. Weld,* 23 R. I., 318; *Johns v. Johns,* 172 Ill., 470; *Conkling v. Washington Univ.,* 2 Md. Ch., 504; *Stanly v. Colt,* 72 U. S., 169; *Jones v. Habersham,* 107 U. S., 183; *Gavin v. Curtin,* 171 Ill., 648.

In the first of these cases (*Curtis v. Brown*) the Court says: "This question of jurisdiction does not depend upon the necessities of this case, but if it is possible that such a case might have existed as would authorize the court to break in upon the provisions of this trust deed, and order a disposition of the property not in accordance with its terms, then the power to do so is established. The case might exist where the property was unproductive, as in this case, but where the *cestui que trust* was absolutely perishing from want, or forced to the poorhouse, or where the trustee could not possibly raise the means to pay the taxes upon the property, and thus save it from a public sale and a total loss, can it be said that the beneficiary

of an estate which would bring in the market $100,000 should perish in the street from want, or be sent to the poorhouse for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. In *Harvey v. Harvey,* 2 P. Wms., the Court said it 'would do what in common presumption the father, if living, would, nay, ought to have done, which was, to provide necessaries for his children.' It is true that courts should be exceedingly cautious when interfering with or changing in any way the settlements of trust estates, and especially in seeing that such estates are not squandered and lost. Trust estates are peculiarly under the charge of and within the jurisdiction of the court of chancery. The most familiar instances in which the court interferes and sets aside some of the express terms of the deed creating the trust is in the removal of the trustee for misconduct and the appointment of another in his stead. But this is as much a violation of the terms of the settlement as is a decree to sell the estate and reinvest it, or to apply the proceeds to the preservation of the estate, or the relief of the *cestui que trust* from pinching want. From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence that power is vested in the court of chancery. This power is liable to be abused or imprudently exercised, no doubt, and so may every power vested in the courts or other branches of the Government. The liability to the abuse or misuse of power can never prove its nonexistence, else all powers of government would be at once annihilated." And in the last (*Gavin v. Curtin*): "We think it is well settled that a court of equity, if it has jurisdiction in a given cause, cannot be deemed lacking in power to order the

sale of real estate which is the subject of a trust, on the ground, alone, that the limitations of the instrument creating the trust expressly deny the power of alienation. It is true, the exercise of that power can. only be justified by some exigency which makes the action of the court, in a sense, indispensable to the preservation of the interests of the parties in the subject-matter of the trust, or, possibly, in case of some other necessity of the most urgent character. The jurisdiction and power of a court of chancery in this respect were the subject of discussion in this Court in *Curtiss v. Brown,* 29 Ill., 201; *Voris v. Sloan,* 68 *id.,* 588, and *Hale v. Hale,* 146 *id.,* 227, and the conclusion reached in each of such cases is in harmony with the view hereinbefore expressed, that courts in equity have full power to entertain bills and grant relief in such cases as that at bar."

We are, therefore, of opinion, upon a careful review of the whole record, that the plaintiff can convey a good title to the defendant, and that there is no error.

Affirmed.