On 5 April, in the same year, John Haslen executed the following instrument of writing, in the presence of one credible witness: "Whereas, by a deed of bargain and sale bearing date 25 February, 1799, between Wilson Blount and Ann, his wife, of the one part, and Edward (701) Kean of the other part, two several tracts of land containing about 800 acres, with the buildings and improvements thereon, lying in Craven County, were conveyed to the said Edward Kean, etc. And whereas, also, I, the said John Haslen, intend shortly to undertake a voyage to the colony of Demarara in South America, and am apprehensive of the dangers to which my life will be exposed in the said voyage; now, therefore, know all men by these presents, that in consideration and in execution of the above power of appointment to be reserved to me, I do hereby direct, limit, and appoint that the land above recited and referred to may and shall be conveyed, sold, and aliened by the said Edward Kean, at his discretion, to any person or persons qualified to acquire, transfer, and hold lands in the State of North Carolina."
John Haslen went to Demarara, and died in March, 1804; and Edward Kean died in August of the same year, neither of them having done anything further towards the execution of the power.
Catharine H. Haslen, the widow of John, executed soon after his death a deed, in the presence of two credible witnesses, whereby she *Page 501 
directed the land to be conveyed to herself; previous to which she had become naturalized in a court of record of the United States, of which she produced authentic testimonials.
It seems to me that this case lies within a narrow compass, and that the whole question settles down into this inquiry, whether the husband by the deed to Kean completely and in due form executed this power. If he did, there is an end to the wife's power; if he did not, she is entitled to appoint. The present controversy (715) is between pure volunteers without any kind of consideration on either side; and the wife is entitled, unless there has been not only anintention to appoint, but an actual appointment, and that in the precise
form required by the power. This provision is proven by many authorities,Dormer v. Thurland, in 2 P. Williams; Ross v. Ewen, in 3 Atk.; Darlingtonv. Pulteney, in Cowp.; Powell on Powers, 150, 163, and many others there cited are directly to that point.
This makes it necessary to inquire in what manner Blount, the donor of this power, declared it should be exercised so as to defeat the right of the wife. He requires it should be by deed executed in the presence ofwitnesses, and that by this deed Haslen, the husband, should limit andappoint to whom Kean should convey, provided such person should be qualified to take, hold, and transfer lands in North Carolina, then the first question is, Has the husband appointed, and in the manner prescribed? That brings us to the deed by the husband to Kean. Does that appoint towhom Kean shall convey? No; it authorizes Kean to convey to whom he pleases, in his discretion. This is a confidence which Blount did not think proper to confer on Kean, nor does he vest Haslen with such a power. It may be said, however, that Haslen took a beneficial interest under the power; for, as he might appoint whom he pleased, he could consequently appoint himself. That will depend upon a fact which does not appear in this case, namely, whether he was qualified to take, hold, and transfer land in North Carolina. If he was, then he had a beneficial interest; but it is indispensable for those who claim the execution of the power, to show every circumstance necessary therefor.
But assuming it as a fact that the husband was qualified and could
appoint himself, and that, having a beneficial interest, could delegate this power, has Haslen exercised it? He has not. But then it is said, having already the legal estate, with Haslen's power, he might appoint
himself. Does Haslen's deed say so? It only authorizes him to bargain, *Page 502 
(716) sell, alien, and convey to any persons, in his discretion, who would be qualified to take, hold, and transfer lands in North Carolina. In substance, the deed is that Haslen authorizes him to sell to any person, being, as the deed declares, "about to take a voyage to South America," when, as the purchaser was to be looked for, it was not in the nature of things that Haslen could be present to appoint him. And though Haslen declares in the deed that he transfers that authority in executionof the power, it is only by reference to his power, and is tantamount to saying "in virtue of his power." It seems to me utterly impossible to read this deed and collect anything like the remotest intention in Haslen to effect any other object than a bare substitution. There is nothing in the deed which even implies that Haslen had surrendered or released to Kean the right of appointing; nor can I think there was anything in the deed which prevented Haslen from revoking it the next moment. The substitute, then, must necessarily stand in the shoes of his principal, and until he had bargained and sold the lands, as he was entrusted in his discretion to do, the power of the wife remained undefeated. To consider this deed as an execution of the power, and consequently a destruction of the power limited to the wife, could only be by a presumption very far-fetched, which I think we are not warranted in doing, in favor of a stranger and pure volunteer; especially when, by so doing, we are defeating the wife, who was an object of the donor's bounty. I say thedonor's, for if it was the husband's bounty, she has still a stronger claim. And according to the light I have considered this case in, it seems to me that no release, or other act of the husband, save the appointment, either by himself or substitute (if he had a right to delegate his power) could defeat the power of the wife, though he might expressly have declared it in the extinction of the wife's power. When I say "appointment," I wish to be understood that in favor of purchasers, courts of equity, on account of the consideration, will effectuate them, wherever defective, and will consider as done what the parties have agreed to do; but (717) it comes to the same thing at last, and is an appointment in equity.
The result of the whole seems to be that by this deed, if it operated at all, the power of the wife was placed at the mercy of Kean, instead of the husband; and that thereby he acquired the power, and nothing more, of defeating by his own act the claim of the wife, which before he could not; but that in both cases it required the exercise of this power. The consequence is that the wife having become qualified to take, hold, and transfer lands in North Carolina, and having appointed herself, the heirs of Kean, who hold the legal estate, must convey to her. *Page 503 
This case has been a subject of tedious litigation, and I have bestowed upon it all the attention which my time and situation would admit of; and it very possibly may be that through my errors and those of my brethren, who think with me, injustice is done the defendants by this determination; and I ought the more to distrust my own opinion, as it is not in accordance with that of the older in the profession than myself; but being placed here for the purpose of deciding, it is my duty to do so in the best manner I am able.
Many points were made in this case upon the difference in powers and the effect of a release; but from the view I have taken of it, they have become unnecessary to be examined, considering the manifest intention of the deed, to be only a substitution of power. But if it were necessary, I should hold that as those who claim an execution of the power must show it, they must, of consequence, show themselves qualified to be appointed. Aliens can take, so can they transfer; but they cannot hold
lands. That, therefore, it does not appear the husband had any beneficial interest. If he had not, that it was then a mere personal confidence, which could not be delegated. And as to a release, that of course would have no effect if he had no interest to give up. But even if he had an interest, as the power of the wife was limited to her by the original donor, to be exercised in default of the appointment of the husband, that both being strangers, and upon an equal footing, the husband, by a release, could only relinquish to the legal owner what he had, and that the only effect would be to lop off one power, in like manner as if it were spent by death; for Blount, who created both powers, (718) and who, as the case appears, is to be considered the benefactor of both, has appointed Kean to hold the estate, subject to the appointment of the wife, in default of any appointment by the husband; and as the release could only destroy what the husband had, as between volunteers, it consequently gave Kean nothing but a dead power; it gave him no ground in equity to oppose the wife's claim; for that must be founded either inregular title, according to the prescribed form, or it must be founded uponmoral obligation, which in equity dispenses with form. So long, therefore, as Kean continued to hold the lands, without any appointment being made by the husband, does the power of the wife remain alive.
I readily admit the execution of a power limited to strangers is to be fairly construed, and this I understand the books to mean when they say "liberally" construed, and that they are to be supported if there appears an intention, and the manner employed is within the fair and liberal exposition of that prescribed by the donor; and had the husband clearly evinced such intention by limiting in this deed that Kean should *Page 504 
have, hold, and enjoy the estate, or words to that effect, that such appointment would have been sufficiently formal, and would have enabled him to have resisted the wife's power. But that, according to the clear design of the parties, he stood in no other condition than one with a general power of attorney to sell the lands in question to any person in his discretion, except such as could not hold them according to the laws of North Carolina.
RUFFIN, J., and DANIEL, J., concurred.