HAUSER v. CRAFT.

(Filed March 8, 1904).

1. WILLS—*Legacies and Devises—Remainders—Estates—Life Estates.*

   Where a devise of property is to the devisee for life and should she die without leaving any children the property to be divided among the rest of her heirs, the devisee gets a life-estate and her children the remainder.

2. COVENANTS—*Deeds—Estates—Remainders—The Code, secs. 1325, 1334.*

   Where land is devised to a person for life and at her death to her children, the children are not estopped by a deed with covenant of warranty executed by the life-tenant.

3. ADVERSE POSSESSION.

   Possession by the grantees of a life-tenant is not adverse to the rights of the remaindermen during the life of the life-tenant.

HAUSER *v.* CRAFT.

ACTION by W. H. Hauser and others against W. W. Craft and others, heard by *Judge W. H. Neal,* at May Term, 1903, of the Superior Court of FORSYTH County.

This is an action for the recovery of real property which was tried in the Court below upon the following case agreed:

"1. Isaiah Coe died sometime in 1836, leaving a last will and testament dated February 5, 1836, in which are these words and figures: "Item 3. I give unto my granddaughter Katherine Scott a tract of land called the Elder tract, being 166 acres, which adjoins Janus Fletcher. Also one negro woman named Bett and one boy named Lawson, one girl named Alley, and their increase from this time forward. Also one horse, bridle, and saddle to be of the value of $100; two cows and calves, five head of sheep, two beds and furniture, a walnut chest or bureau; also two acres of meadow land out of the River tract, adjoining her grandmother Pierce, with the privilege of a cartway to and from the same, which is to be hers during her natural life only, and should the said Katherine Scott die without leaving any child or children, then the property which I have given to her to be divided among the rest of my heirs.'

"2. Katherine Scott was a granddaughter of Isaiah Coe (her mother, a daughter of Isaiah Coe, having died prior to February 5, 1836), and living with her grandfather, and on May 22, 1840, the said Katherine Scott for and in consideration of $275 deeded to George Newman in fee-simple the Elder tract containing 166 acres, more or less, which is the land in dispute, with the following clause of warranty: "The said party of the first part for the consideration aforesaid does hereby covenant and agree to warrant and defend the premises aforesaid to the said party of the second part, his executors, administrators and assigns, against the claims and entries of all persons whatsoever, and she further covenants that she is seized of the premises in fee-simple and has power

to make and convey such an estate by this indenture, and has done the same by these presents.

"3. That Katherine Scott intermarried with Adam Hauser in 1842 and by him had the following children, W. H. Hauser, C. S. Hauser, M. E. Fleming, wife of J. C. Fleming; Louisa Scott, wife of S. W. Scott, and Sarah Chaplain wife of J. M. Chaplain, who are the plaintiffs in this action.

"4. That subsequent to May 22, 1840, George Newman sold the above-described land to W. F. Shore, who in 1874 conveyed said land to the defendants, and the defendants in said action have since their purchase put upon said land valuable improvements.

"5. That the defendants are now in possession of said land and deny the right of the plaintiffs to recover; that the defendants and those under whom they claim have been in possession of said land under known and visible lines and boundaries since 1840, as shown in their deeds.

"6. That Katherine Hauser, *nee* Scott, died during the year 1899, and this action was commenced on April 10, 1900.

"7. That said Isaiah Coe has descendants now living other than the plaintiffs in this action."

The plaintiffs claim the land as the children of Katherine Hauser, formerly Katherine Scott, under the third item of the will of Isaiah Coe and their contention is that by a proper construction of that item their mother acquired only a life-estate in the land, and at her death, by implication or construction of law, they took a remainder in fee. Their counsel also contended at the bar that if they did not take under the will as the children of Katherine Hauser, then they took as heirs of Isaiah Coe under the ulterior limitation, and while they are not all of his heirs they can recover as tenants in common of their co-heirs the entire estate in the land, as against the defendants who have no share or interest therein.

The defendants, on the contrary, insist that by the proper

construction of the third item of the will Katherine Scott took a fee contingent upon her dying without leaving children, and as children born of her marriage with Adam Hauser have survived her the contingent estate became absolute and indefeasible, and this estate they have acquired by *mesne* conveyances from her. They also contend that the claim of the plaintiffs, who are heirs of Katherine Hauser, is rebutted by the warranty in their ancestor's deed which is relied on as a defense in bar of their recovery, and, if not, that it is barred by long continued adverse possession under the statute of limitations. There was judgment for the plaintiffs, and the defendants excepted and appealed.

*Glenn, Manly & Hendren,* for the plaintiffs.
*J. E. Alexander, A. E. Holton* and *Benbow & Hall,* for the defendants.

WALKER, J., after stating the case. We decided at the last term in *Whitfield v. Garris,* 134 N. C., 24, that when property is given to a person absolutely, and if he should die without leaving children, or heirs of his body, then over, the primary devisee takes a fee defeasible on his dying without leaving children, and that the children, if he leave any, take no estate as purchasers under the will by implication. If the first taker dies leaving children and without having disposed of his defeasible estate, the children take from him by descent and they cannot take it by implication as purchasers, unless that was the intention of the testator expressed in the will or to be clearly inferred therefrom. 1 Underhill on Wills, section 468. We could discover no such intention of the testator in that case. The rule thus stated also applies where the devise is in the first instance to the parent for life and then over to ulterior devisees if the parent dies without leaving children. But in the latter case it is

said that the law will raise an estate in remainder by impli-
cation in favor of surviving children upon slight indication
of an intention to that effect, and one reason for the rule is
that it would be absurd to assume the testator intended that
the death of the first taker leaving no children should entitle
the devisee who is to take in remainder or by way of execu-
tory devise, while the converse, that is, his death leaving a
child, will defeat the limitation over without benefitting
either parent or child.   1 Underhill on Wills, section 468,
p. 623; *Kinsella v. Caffery,* 11 Ire., Ch. Rep., 154; *Ex Parte
Rogers,* 2 Maddox Ch., 1 Am. Ed., 576.   Whether this be
the correct principle or not, it is certainly true that if it suf-
ficiently appears from the will the testator so intended, the
law will raise an estate by implication in favor of the chil-
dren in such a case, notwithstanding the estate is not ex-
pressly limited to them in the will.   We must, therefore,
determine in our case whether Katherine Hauser took only
a life-estate in the Elder tract of land, which is the property
in dispute, or an estate in fee, and if she took only a life-
estate, whether the plaintiffs took an estate in remainder by
implication, or if not whether, lastly, they took as heirs of
the testator under the ulterior limitation.   It is admitted
that Katherine Hauser took only a life-estate, if the words
in the third item, namely, "Which is to be hers during her
natural life only," should not be confined to the gift of the
"meadow land and cartway," but should be extended to the
limitation of the Elder tract.   The defendants contend that
if the third item of the will is construed as it is punctuated,
the qualifying words apply only to the meadow tract and
cartway and not to the Elder tract.   That a will is couched
in ungrammatical language and is incorrectly punctuated
are facts of little importance in construing it.   The punct-
uation may in certain cases have some effect in ascertaining
the true meaning, and it is said to be a guide, though not a

very reliable one, to aid us in seeking for the testator's intention, but the latter must always be determined exclusively from the words employed by the testator, viewed in the light afforded by the context. The punctuation, or the lack of it, is not material and may be omitted or supplied by the Court. Commas may be inserted for periods or *vice versa,* in order to accomplish the paramount object, which is the ascertainment of the testator's will or meaning. 1 Underhill, *supra,* section 369. But, while this may be done when necessary to effectuate the intention of the testator, we do not think that the punctuation of the third item of the will evinces a purpose to separate the qualifying clause from that part of the devise which precedes the reference to the meadow land and cartway and to restrict its operation entirely to the latter. It is evident from the entire structure of that item of the will that the testator intended to limit the interest of Katherine Hauser in all the property described in it to a life-estate. If he had intended differently he would in some way have indicated his purpose to give a fee in the property other than the meadow land and cartway in more explicit language. There is just as much reason for holding that the restrictive words apply to the Elder tract of land as there is for construing the will so that they may be confined in their operation to the meadow land and cartway. The relative pronoun "which" must be understood to refer to all that precedes in that item of the will, and especially is this so when the clause which it introduces is placed in immediate connection with the last provision of the item, namely, "and should the said Katherine Scott die without leaving any child or children the *property* which I have given to her to be divided among the rest of my heirs." This provision follows the clause "which is to be hers during her natural life only" and is joined to it by the conjunction

"and," which shows that the testator intended that the two
should be taken and construed together, and, if this is done, it
is perfectly clear that the testator intended to give his grand-
danghter Katherine Scott a life-estate in the Elder tract.
The interpretation we have thus placed upon the item seems
to us to be the only natural and reasonable one, and, besides,
we are utterly unable to see any good reason why the testator
should have given his grandchild an estate for life in the two
acres of meadow land and the cartway and a fee in the other
property. A careful reading of the item shows that his pur-
pose was to make ample provision for this grandchild, who
lived with him and who was dependent upon him, by giving
her a farm with slaves to cultivate it and other necessary per-
sonal property for its better and more convenient enjoyment,
and the meadow land "with the privilege of the cartway to
and from it" as a means of ingress and egress was given as
an appurtenance to the larger tract, and as being necessary
also for its advantageous enjoyment. It is all one devise
and bequest, and the use of periods and capitals was not in-
tended to disassociate the different clauses so as to constitute
each one of them as the expression of a separate and distinct
gift of the property therein described. The defendant's
counsel contended that because of the peculiar punctuation
and the use of capitals the restricted clause applied only to
the meadow land and cartway; but if we consider the method
of punctuation as indicating the intention, there is no rea-
son why that clause should not be as well applied to the horse,
bridle and other species of personal property mentioned and
described immediately before the meadow land and cartway.
They are separated only by semicolons, and the grammatical
construction would require the restriction to be extended to
them.

In construing wills, as exactly the same language or form
of expression is rarely used, each case must, generally speak-

ing, be decided upon its own facts, and the intention of the testator is to be diligently sought for and when found is to be carried out if not contrary to the law, but the intention must be gathered from the whole will. We can derive little aid from merely technical rules. In this case it appears that at the time the will was executed Katherine Scott was living with her grandfather and was unmarried. It is manifest he intended that in the distribution of his estate she should represent her mother, who was his daughter (which is admitted in the defendant's brief), and doubtless he would have given the property to Katherine in fee, as he did to all his daughters, but for the fact that the latter were married or had been and were of sufficient age and experience to manage what he should give them with judgment and discretion. They were practically settled in life. With his grandchild, who must have been the object of his most anxious care and solicitude, it was quite different. He knew full well that she might not, as she did not, attain her majority until long after his demise, and that, inexperienced as she was, she perhaps would not have any one to advise her in the management of her estate. It was for the purpose of providing against ultimate loss by reason of her own improvidence, or that of her husband if she should marry, that he did what seemed to him best to safeguard what may be called her patrimony, so that she could enjoy the use and income of it during her life, and so that the remainder would be preserved for her children if she had any. No other reason can be assigned for his making the distinction which he did between her and his daughters. We could not for a moment yield to the suggestion that his affection for her was not as strong as it was for them and that he wished to discriminate against her. Her peculiar and dependent situation was calculated to arouse in him a very tender and anxious regard for her future condition in life, and, though not abating any of his

affectionate interest in her nor desiring less to see her as well placed as the others, he no doubt felt that, as her future course in life was uncertain and her ability to prudently manage what she would receive from him was unknown, it was best she should not have the absolute ownership of the property; but, whatever may have been his motive, we are unable to look at this will from any standpoint which does not reveal the clear intention of the testator to give the property and all of it to Katherine Scott for life. This conclusion takes the title out of the defendants, but it does not alone entitle the plaintiffs to succeed in this action, because they are suing for the recovery of real property, and according to the invariable rule they must recover upon the strength of their own title and not upon the weakness of the title of their adversaries. The defendants are not required to show that they have any title in the land, but the plaintiffs must show affirmatively that they have a title which is good against the world, or good against the defendants by estoppel. So that we must go further and decide whether the children of Katherine, who are the plaintiffs in this action, took an estate in remainder at her death by implication. There is no express gift to them, and if they took at all it must have been by construction of law. We are clearly of the opinion that they did so take. The limitation is "should the said Katherine Scott die without leaving any child or children, then the property which I have given to her to be divided among the rest of my heirs." It will be observed that Katherine had only a life-estate, and therefore at her death all of her interest ceased and determined. The heirs of the testator could not take unless she died without children, because it is expressly provided by the will that they should take only upon the contingency of her dying without leaving children, and the fact that she died leaving children completely divested the testator's heirs of all right or title in the land. The pre-

sumption is that he did not intend to die intestate as to any of his property, and this presumption is strengthened by the very language of the will which on its face shows that he intended to dispose of all of it. If the estate of Katherine expired at her death and the heirs cannot take because she left children, who then can take unless it be the children? *Holton v. White,* 23 N. J. L., 330; Theobold on Wills, p. 569. The implication is not only necessary but irresistible that in the situation of the parties as now presented to us, and giving to the will of the testator a natural and reasonable construction, it was intended by him that the plaintiffs should be the objects of his bounty and should take the property in remainder after the death of their mother. In this respect the case is not at all like that of *Whitfield v. Garris.* There was nothing in the will under construction in that case to raise any such an implication, as the estate was limited to Franklin Whitfield in fee, and, besides, the presumption was that the testator did not intend to disinherit his own heirs There were others than the children who could take, and the children could take only by descent from their parent. In the case at bar we must hold either that it was intended the children should take a remainder at the expiration of their mother's life-estate or that the fee should be in abeyance, or we must disregard the plainly expressed intention and direction of the testator and hold that he intended that at the death of the tenant for life the estate should go to his heirs. The adoption of either of the last two alternatives would be opposed to every known principle of the law applicable to such cases. We must abide by the rule as established by the authorities we have cited and give our decision upon this point in favor of the plaintiffs.

It was suggested by counsel at the bar that Katherine Scott, under the rule in Shelly's case, took an estate tail, which by the statute of 1874 (The Code, sec. 1325) was

converted into a fee-simple. The rule does not apply to this devise. The words of limitation are not such as bring our case within the principle of that rule, and we do not think it can be shown by any of the authorities to have the slightest bearing upon the question involved. There are no words used which indicate any intention on the part of the testator that Katherine Scott should take an estate of inheritance either in fee-simple or in fee tail, as the only word used is "children," and that word by all of the authorities is not sufficient for the purpose of creating such an estate. *Moore v. Parker,* 34 N. C., 123; *Ward v. Jones,* 40 N. C., 400; *Howell v. Knight,* 100 N. C., 254; *Mills v. Thorne,* 95 N. C., 362; *Starnes v. Hill,* 112 N. C., 1, 22 L. R. A., 598; *Leathers v. Gray,* 101 N. C., 162, 9 Am. St. Rep., 39. The estate of the children could not become absolute and indefeasible until the determination of the life-estate, as the remainder was contingent, and this prevented the operation of the rule. *Starnes v. Hill, supra.* Besides, the application of the rule would defeat the well-defined intention of the testator, and there are not sufficient technical words in the will to override this intention. In such a case the rule can have no place.

Counsel further contended that the plaintiffs as the children of Katherine Hauser, formerly Katherine Scott, are rebutted by the warranty in her deed under and through which the defendants claim the land. This position is equally untenable. All collateral warranties are abolished, and all warranties made by any tenant for life of lands, tenements or hereditaments, the same descending or coming to any person in reversion or remainder shall be void; and all such warranties as aforesaid shall be deemed covenants only and bind the covenantor in like manner as other obligations. This is the language of the statute (The Code, section 1334), and is too clear and explicit to admit of any doubt as to its true meaning. It covers the case completely and is a full

and conclusive answer to the contention, and, besides, the authorities are all against the defendants upon this point. The warranty of Katherine Scott, who had only a life-estate, does not bar or rebut the plaintiffs who are her children, because the latter claim as remaindermen, and therefore not by descent but by purchase. This is the construction of our statute, it being a re-enactment of 4 Anne, ch. 16, sec. 21, which has received the same interpretation. *Moore v. Parker* and *Starnes v. Hill, supra.* The matter is fully and ably discussed by *Pearson, C. J.,* in *Southerland v. Stout,* 68 N. C., 446. The warranty in our case has the force and effect only of a personal covenant, the difference between which and a warranty, which operates as a bar by way of rebutter, is explained in *Wiggins v. Pender,* 132 N. C., 628, 61 L. R. A., 772.

The last defense is that the defendants have had adverse possession for a sufficient length of time to bar the right of the plaintiffs, but this position is clearly untenable, as it is agreed in the case that Katherine Hauser did not die until the year 1899, and this action was commenced in 1900. The statute was not set in motion until her death, as the plaintiff had no right to the possession before she died or during the continuance of her life-estate.

It was agreed in the Court below that certain questions as to rents, profits, improvements, and betterments should be reserved to be considered and decided hereafter in that Court.

We find no error in the judgment of the Superior Court, and it will be so certified to the end that further proceedings may be had in accordance with the agreement of the parties and the law.

No error.