MRS. ALICE A. TILLETT, MALVERN H. TILLETT, AND AMY TILLETT
v. FRANK H. NIXON AND WIFE, ANNIE NIXON.

(Filed 13 October, 1920.)

1. **Estates—Remainders—Contingencies— Children— Possibility of Issue Extinct—Fee Simple—Deeds and Conveyances.**

An estate for life, and also upon contingency in fee should the tenant for life die without children, vests the estate immediately upon the death of the testator in the first taker upon the contingency stated; and where she has only one child the possibility of her bearing others being waived, a deed made by both will convey the fee-simple title to the purchaser. The effect of a general power of disposition given by will to the first taker, and the difference between the expressions "devise" and "bestow," discussed by WALKER, J.

2. **Wills—Power of Disposition.**

Where a devisee of a life estate, who also was given a general power in the will to dispose of it, has become, then, by descent, the owner of the reversionary interest, her right to alienate the property is an ordinary incident of her ownership, and is not restricted by the terms of the power, as the life estate and the reversion have become merged in her, thereby vesting in her the absolute ownership regardless of the power.

3. **Same—Waiver.**

The devisee of a life estate in lands with a general power of disposition to take effect after the termination thereof, waives the right to exercise such power by her deed conveying her title thereto when it appears that she had acquired the reversion by descent.

HOKE, J., concurs in result.

APPEAL from *Bond, J.,* at chambers, 30 July, 1920; from PASQUOTANK.

This is a controversy without action submitted under the statute (Rev., 803) for the decision of the court, upon the following facts agreed:

"Mrs. Alice A. Tillett, Malvern H. Tillett and wife, Amy Tillett, plaintiffs above named, and Frank Nixon and wife, Annie Nixon, defendants above named, parties to a question in difference, which might be the subject of a civil action, hereby agree upon the following case containing the facts upon which the controversy depends, and respectfully present a submission of the same to the Superior Court of Pasquotank County, and to you as judge of the First Judicial District, for decision, said facts being as follows, viz.:

"1. That on 17 December, 1878, Nathan Overman, a resident and citizen of Pasquotank County, died, leaving a last will and testament, duly attested, probated, and recorded in said county of Pasquotank, copy of which is hereto attached, marked 'Exhibit A,' and made a part of this case, containing the facts agreed.

"2. That Margaret Overman, wife of the testator, Nathan Overman, and being the same referred to in the will of Nathan Overman, hereto attached, died on 30 April, 1879.

"3. That the plaintiff, Mrs. Alice A. Tillett, is, and was at the time of the death of the said Nathan Overman, the only child and heir at law of the said Nathan Overman, deceased, and is the daughter, 'Alice A.,' referred to in the will of Nathan Overman hereto attached.

"4. That the plaintiff, Malvern H. Tillett, is the only child born to the plaintiff, Mrs. Alice A. Tillett, and that the plaintiff, Amy Tillett, is his wife.

"5. That at the time of his death the said Nathan Overman was seized and possessed in fee of a certain lot of real estate in Pasquotank County, North Carolina, and more particularly described as follows, to wit:

"'Situated on the north side of Church Street in Elizabeth City, N. C., being the main residence of Mrs. Alice A. Tillett, and bounded on the north by the lands of G. W. Palmer and Chas. Sawyer; east by the lands of John L. Hinton heirs; south by Church Street; and west by other lands of Mrs. Alice A. Tillett, which she inherited from her father, Nathan Overman, deceased; same fronting eighty-three feet on Church Street and running back between parallel lines to the northern boundary of said property as heretofore given.'

"6. That the plaintiffs and defendants have heretofore entered into a certain contract, under the terms of which the defendants have agreed to purchase from the plaintiffs, at the price of $8,000 cash, and the plaintiffs have agreed to sell to the defendants at said price, and to convey to the defendants a good and indefeasible title to the lands described in the preceding section.

"7. That the plaintiffs have heretofore tendered to the defendants a proper deed, sufficient in form, purporting on its face to convey title to said lands in fee to the defendants, executed by plaintiffs in their own right, and by virtue of said power, with full covenants of warranty, seizin, and right to convey, and that the defendants have refused to accept said deed and to pay the purchase price for said lands, claiming that the plaintiffs are not seized of said lands in fee, and cannot convey a good and indefeasible title in fee simple.

"8. That Mrs. Alice A. Tillett is now a widow, seventy-two years of age, and that there is no human probability of her remarriage, followed by the birth of issue; and that the legal possibility of such an issue has been, and is hereby, expressly waived by the defendants, as a ground of objection to said deed.

"9. Upon the foregoing facts the plaintiffs contend that they are seized of said premises in fee, or have a right by virtue of the power in

the will, and otherwise, to convey the same in fee simple, subject only to the legal possibility of lawful issue hereafter born to the plaintiff, Mrs. Alice A Tillett; and the defendants contend that the plaintiffs are not seized of said premises in fee, and have not a right, by reference to said power, or otherwise, to convey the same in fee simple, subject only to the legal possibility of issue born hereafter to the plaintiff, Mrs. Alice A. Tillett; it being hereby expressly agreed between the plaintiffs and the defendants that if the court shall be of the opinion with the plaintiffs upon the foregoing contention, judgment shall be rendered for the plaintiffs, decreeing that the defendants accept said deed and pay said purchase price, and if the court shall be of opinion with the defendants upon the foregoing contention, then judgment shall be rendered for the defendants accordingly.

"Wherefore, the said parties to this controversy, desiring to expedite the determination of the aforesaid matters in controversy between them, submit the foregoing facts to this honorable court, and respectfully request its decision upon said question in difference. (Signatures of parties, with verification.)

" 'EXHIBIT A.'

"Be it remembered, that I, Nathan Overman, of sound and disposing mind and memory, of the town of Elizabeth City, N. C., do make, publish, and declare this paper-writing to be and to contain my last will and testament, as follows, to wit:

"1. I appoint my beloved wife, Margaret, executrix of this my last will and testament, directing her first to select from my household and kitchen furniture such articles for her own use and comfort as she may think proper and necessary, sell the residue thereof, if any, and also all my wares, goods, merchandise, and every of my personal property; collect all notes and sums of money due me by account, or otherwise, and rent due from year to year during her natural life, my store, house, and all other of my town lots and buildings (except the dwelling-house and lot where I now live), and from the sale, collections, and rents as aforesaid, pay all my debts and the balance thereof, including rents of my said house, even unto the death of my wife, I give and bequeath unto my wife Margaret, and my daughter Alice A. Overman, jointly and equally, share and share alike.

"2. I give and bequeath unto my wife, Margaret, and my daughter, Alice A. Overman, and their heirs forever, jointly and equally, share and share alike, my farm in this county, near Salem, known as the Thomas Harvey farm, including all the lands I own in Bluff Point.

"3. I leave to the use and enjoyment of my wife during her natural life the lot of land and building thereon where I now live; also such of

my household and kitchen furniture as she may find necessary for her convenience and comfort. Should my wife survive my daughter Alice, and also all children of my daughter, in such event I give to my wife and her heirs all my town property of every class. But should my daughter Alice survive my wife, Margaret, and die without leaving issue of her body begotten, in such event my said daughter shall have power to devise and bestow after her death unto or upon whomsoever she will all my estate not hereinbefore devised, if any; nevertheless, should my daughter Alice have children of her body begotten, any or any one of which survive both my wife, Margaret, and my daughter, Alice, I give and bequeath to them, or that one, as the case may be, after the death of both my wife and my daughter, all my town property of every kind, to them, him, or her, as may be, and their, his, or her heirs forever. In witness, etc.          (Signed)   NATHAN OVERMAN."

Judgment was rendered dismissing the proceeding, and taxing the plaintiffs with the cost. Exception and appeal by plaintiffs.

*Meekins & McMullan for plaintiffs.*
*W. A. Worth for defendants.*

WALKER, J., after stating the case: We are compelled to differ from the learned judge, upon the admitted facts, as to the ability of plaintiffs to make a good and indefeasible title to the land described in the contract of sale, and in the deed tendered by them to the defendants therefor.

Without deciding the first important, and very interesting question, raised by the plaintiffs (for a reason hereafter given), it is proper, we think, and fair to them, that we should, though in our own language, state the substance of their claim, and the reasoning by which it is supported, as the question may be presented again, and it may aid the court in coming to a correct conclusion, whether it be one way or the other. We do so more especially in this case, as there are strong and safe reasons upon which we may base our conclusion, without deciding the one as to the right of the donee of the power to convey by deed, as well as by will. Plaintiffs' contention:

First. The daughter could, by deed, pass a good title as owner of the life estate and donee of the power.

The testator's wife, Margaret, being dead, the contingencies under which she might take, in item 3, are eliminated from consideration. It then appears that by item 3 of the will the testator devised the property in controversy to his daughter, the plaintiff, Mrs. Alice A. Tillett, in the event of a failure of children surviving her, "to devise *or bestow* after her death unto or upon whomsoever she will all my estate hereinbefore devised." It is, therefore, manifest that if the plaintiff, Malvern Tillett,

shall survive his mother, Mrs. Alice A. Tillett, then the deed and title tendered by the plaintiffs to the defendants are good, since in that event the absolute fee simple is vested in him under the provisions of the will. The question, however, is presented as to the validity of the title and deed if the plaintiff, Malvern Tillett, should predecease his mother. And it is submitted for the plaintiffs that in that event the title and deed would be good. Upon the contingency that no child of hers survives her, Mrs. Alice A. Tillett, under the power of the will, can convey the fee simple. It is not contended that the power given to Mrs. Alice A. Tillett in the will has the effect of enlarging her life estate into a fee simple. The contrary seems now to be well settled in this State. It is equally well settled, however, that upon the devise of a life estate, coupled with an absolute power of disposition, the devisee of the life estate, Mrs. Alice A. Tillett, who is also the donee of the power, is enabled to convey the property in fee. *Mabrey v. Brown,* 162 N. C., 217; *Herring v. Williams,* 153 N. C., 231; *Herring v. Williams,* 158 N. C., 1; *Long v. Waldraven,* 113 N. C., 337; *Stroud v. Morrow,* 52 N. C., 463.

This principle is settled. A devise of an estate, generally or indefinitely, with a power of disposition over it, carries a fee. But where the estate is given for life only, the devisee takes only an estate for life, though a power of disposition or to appoint the fee by deed or will be annexed, unless there be some manifest and general intent of the testator which would be defeated by adhering to the particular intent. Words of implication do not merge or destroy an express estate for life, unless it becomes absolutely necessary to uphold some manifest general intent. The *Church v. Disbrow,* 52 Penn. St., 219, which has been approved and adopted by this Court in *Bass v. Bass,* 78 N. C., 374; *Patrick v. Morehead,* 85 N. C., 62, and in *Long v. Waldraven, supra.* Hence, it was said, in the case last cited, that an express estate for life to the wife, with a power to dispose of the fee, shall not turn her estate for life into a fee. It was further said that the testator did not direct that one-third of his estate should, upon the death of his wife, go to whomsoever she should think proper to make her heir or heirs, in which event it might be said, perhaps, as in *Sherer v. Sherer,* 1 Wash., 266 (1 Am. Dec., 460), that the wife, by suffering her legal representatives to succeed her, actually made them her heir or heirs as much so as if she had pointed them out by an express devise.

The compass of this inquiry is narrowed, then, to the question as to what is the nature of the power given to Mrs. Alice A. Tillett under the will in conjunction with the life estate devised. In this connection, it appears that at the time of the execution of this will the plaintiff, Mrs. Alice A. Tillett, and the wife, Margaret, now deceased, were not

only the sole natural objects of the testator's bounty, but, as shown by the provisions of the will itself, the sole primary objects of his consideration, affection, and regard. *Hauser v. Craft,* 134 N. C., 326. The power in the will itself is a power appurtenant, as distinguished from a power collateral—a power coupled with a duty or trust. It is a power, the exercise of which is voluntary, and must, therefore, be considered as having been given in the will of the testator for the benefit of the plaintiff, donee of the power, and the benefit of the ultimate appointee. These being the circumstances surrounding the execution of the will, it is difficult to imagine any reason why, in view of the contingency upon which alone the power is given, the exercise of the power should have been confined by the testator to any particular manner. It is easy to conceive why the estate devised to Mrs. Alice A. Tillett should be restricted to a life estate, and the power of disposition altogether withheld in the event she had children surviving her, but failing this contingency, no reason appears why the testator, having devised to his daughter a life estate, and having then the intention to give her the power of disposition for her own benefit exclusively, should have limited the exercise of this power to an appointment by will, which could not benefit the donee, thus nullifying his very purpose in creating the power.

The contention of the defendants that the power can only be exercised through the form of a will by Mrs. Alice A. Tillett is further negatived, as plaintiffs contend, by the language of the power itself. Attention is again called to the language in which this power is created, as follows: "My said daughter shall have the power to devise, or bestow, after her death, unto or upon whomsoever she will, all my estate not hereinbefore devised."

One of the primary rules in the construction of wills is to give significance and effect to every word, where possible, without contravening the clear intention of the testator elsewhere expressed, or some positive rule of law or public policy. The fallacy in the defendant's contention, therefore, is that it not only overlooks the circumstances surrounding the execution of the will, but also the use of the word "bestow" in the creation of the power. This word was not used synonymously with the word "devise." To hold that it was would be to say that the testator having already used the word "devise," had without reason interpolated another word having exactly the same meaning—that is to say, would be to deny to the word "bestow" its ordinary meaning. There exists, furthermore, no authority or reason for construing this word as synonymous with "bequeath." Both the lexicographers and popular use deny the word such narrow signification. And it is, furthermore, to be remembered that in the use of this word the testator was referring to

lands. This appears conclusively from consideration of the estate, subject to the power, to wit: "all my estate not hereinbefore *devised*." In "Words and Phrases" the word "bestow" is defined to mean "to give, to confer, to impart." The meanings of the word given above are accepted by high authority. Thus, in Corinthians 1:12:3, we find this language: "Though I bestow all my goods to feed the poor"—it being apparent that the word "goods" in the quoted sentence is used to designate property generally, real and personal, rather than any particular kind. And so, in Deut., ch. 14:26: "Thou shall bestow that money for whatsoever thy soul . . . desireth." The word has various other meanings, and some of them curious, as, for instance, "to expend," as money, this being obsolete; to give in marriage, "I could have bestowed her on a fine gentleman," as it was used in "The Tattler." "To demean, or to conduct oneself, to behave." "How might we see Falstiff *bestow* himself tonight in his true colors, and not ourselves be seen," as used by Shakespeare. "To lay up in store, or for safe-keeping, to store or place somewhere." "He bestowed it in a pouch," as said by Sir Walter Scott. But lexicographers are apparently in accord that "bestow" is synonymous with the words, "to give, grant, or confer," and this seems to be its common and prevalent meaning. In popular usage, too, the word signifies a transfer by one of something of value to another, without regard to the form of transfer. By the use of the word "bestow" the testator meant more than the mere use of a word synonymous with that of "devise," and as it has a meaning different from that of "devise," and includes the idea of parting with property whether by will or deed, it should have that meaning, as there is no reason why the testator should have restricted the exercise of the power to any particular method of passing the estate or transferring the land. In the light of the circumstances surrounding the execution of the will, therefore, and the plain meaning of the word "bestow" itself, the intention of the testator becomes clear to devise to his daughter a life estate with a remainder to her children, if any, surviving her, coupled with a power to dispose of the property generally failing that contingency. This construction in no wise conflicts with his use of the words "after her death," in the language creating the power—these words referring manifestly to the estate to be appointed to the use, or the time when it shall vest. Not even a power to devise can be executed after the death of the donee. This would, of course, be a physical impossibility. It meant, therefore, that she should have the power to appoint the remainder, or reversion, after her life estate, and that the estate thus appointed under the power should not commence or take effect until after her death. It follows, therefore, that, if the plaintiff, Malvern Tillett, should predecease his

mother, her deed, executed by virtue of the power, would convey the fee simple. This is one of the plaintiffs' arguments, with their conclusion therefrom.

We are not all well agreed as to this proposition, but are as to the second one, and therefore prefer to rest our decision upon the latter, which we will now proceed to consider and decide.

Second. Plaintiffs have the right to convey a fee simple without reference to the power.

While it is true that a devise of an estate for life, coupled with the power of general disposition, does not enlarge the life estate into a fee, it is yet equally true that where there is a devise in fee, coupled with a voluntary power to appoint in fee, the devisee takes the absolute fee simple in the property, irrespective of whether the power of appointment is or is not restricted as to the manner of execution. The reason of this rule is that the right to dispose of property, whether by will, deed, or otherwise, is an ordinary incident of absolute ownership, which cannot be restricted, as to the manner of its exercise, by the power—the creation of the power in such cases being regarded as merely declaratory of a right already existent by virtue of the unqualified ownership of the property. This being the reason of the rule, it follows that wherever the donee of a voluntary power to appoint, either generally or in some particular manner, becomes vested with the absolute ownership in the property, subject to the power, such donee takes the property, together with the ordinary right of alienation unqualified in any degree by the existence of the power.

Applying these well settled principles to the case before us, it will be seen from the will in controversy that in the event the plaintiff, Mrs. Alice A. Tillett, should die without children surviving her, and in the further event that she should fail to exercise the power in the will, she will acquire the fee by descent from her father, there being no ulterior limitation of the property devised to her for life. Assuming that she outlives the plaintiff, Malvern Tillett, and also fails to exercise the power, then it appears that the only devise of this property made by the testator was of a life estate to her, Mrs. Alice A. Tillett, and that he died intestate as to the remainder or reversion. This being true, the remainder or reversion, that is to say, the fee simple in the property, subject to the life estate devised, immediately vested in his heirs at law. As to who were his heirs at law there can be no question. It is elementary that the descent is cast immediately upon the death of the ancestor, and it appears from the case agreed that at the time of the testator's death in this case, the plaintiff, Mrs. Alice A. Tillett, was his only child and heir at law. The descent was, therefore, immediately cast upon her, and by virtue thereof, and by virtue further of the devise:

TILLETT v. NIXON.

to her of a life estate, she became, immediately upon the death of the testator, the owner of the property in fee, subject only to the contingency that she should have children surviving her at her death. Assuming this contingency to happen (which is waived), it is plain, for reasons set out hereinbefore, that the deed tendered to the defendants, being executed by M. H. Tillett, her son, would pass the fee simple. Assuming this contingency not to happen, then Mrs. Alice A. Tillett is the absolute owner of the property in fee by devise of the life estate, and by descent of the reversion, coupled with the power to dispose of the property, either generally or by will. This being true, then, by virtue of the foregoing principles, her right to alienate the property as an ordinary incident of her ownership cannot be restricted by the terms of the power.

It furthermore seems to be well settled that a power coupled with an interest may be released. 21 R. C. L., 808; *Haslen v. Kean*, 4 N. C., 700. In 21 R. C. L., 808, where it is further said: "It is only consonant with the principles of fair dealing and common sense that any conduct of the donee of a (voluntary) power which in good faith precludes him from making an appointment, should have the effect of an estoppel. Any dealing with the estate by the donee of the power inconsistent with its exercise by which the rights of others are affected puts an end to the power." It would uphold a fraud if it did not. *Langley v. Conlan*, 212 Mass., 135; also reported in Ann. Cases, 1913 C, p. 421. In the case of *Langley v. Conlan, supra*, and the cases cited in the text, and the notes in Annotated Cases, will be found the fullest exposition of the law, the facts being practically on all fours with the facts in this case. In the cited case there had been a devise of lands for life to the daughter, coupled with a power to appoint by will. The devisee was one of two daughters of the testator, who died intestate as to the reversion. The daughter thereupon mortgaged the premises, and subsequently exercised the power of appointment, naming the defendants, Conlan and Abler. The Court held that the daughter, having taken a life estate by devise, and one-half of the reversion by descent, and having subsequently acquired the other half by purchase, the power was extinguished; and second, that the daughter, having, by mortgaging the property, dealt with it in a manner inconsistent with the subsequent exercise of the power, an estoppel was thereby raised which precluded her appointee under the power. But whether, under the foregoing principle, the power be extinguished or the donee estopped from exercising it, by reason of her inconsistent prior conduct in respect to its subject, it cannot be doubted, as we think, that such a power was destroyed under the doctrine of merger, when the descent was cast upon her and she thereby acquired the fee, not by purchase, or anything equivalent to it, but by inheritance, which blended the two estates.

TILLETT *v.* NIXON.

The question now presented is clearly stated, and thoroughly discussed by *Chief Justice Rugg* in *Langley v. Conlan,* 212 Mass., 135, and we may be excused for quoting somewhat extensively from his opinion, as it seems to cover the precise matter completely and in all its bearings. He says, at page 137: "The question has never arisen in this commonwealth whether the donee of a power can be estopped from a voluntary exercise of the power. But it seems to follow from the decisions in *Clapp v. Ingraham,* 126 Mass., 200, and *Tuell v. Hurley,* 206 Mass., 65, 67. It is only consonant with principles of fair dealing and common sense that any conduct of the donee of a power which in good faith precludes him from making an appointment should have the effect of an estoppel. Any dealing with the estate by the donee of the power inconsistent with its exercise by which the rights of others are affected puts an end to the power. It has been so held in other jurisdictions. *In re Hancock* (1896), 2 ch., 173; *Foakes v. Jackson* (1900), 1 ch., 807; *Leggett v. Doremus,* 10 C. E. Green, 122, 127; *Brown v. Renshaw,* 57 Md., 67, 79; *Grosvenor v. Bowen,* 15 R. I., 549." It is further said on the same page: "This principle prevails notwithstanding the general rule that appointees by exercise of a power take, not through the person making the appointment, but through the donor of the power. Where the execution of the power is voluntary on the part of the donee, his conduct may be such as to prevent the exercise of the power. This is such a case. Eliza J. Langley made conveyance in mortgage with full covenants of warranty to the demandant. She received for her own use the consideration of the mortgage. It is hard to conceive of conduct more decisely indicating in good faith a promise not to exercise the appointment to the prejudice of the mortgagee. It follows that the appointees under the will of Eliza J. Langley have no title in the demanded premises." In still further elucidation of the principle, while dealing with facts very much like those in our record, he shows by unanswerable reasoning that the life tenant and donee of the power could by deed pass a valid and unassailable title. We are not speaking here of the right to convey by deed under the power, but of a very different question. The Chief Justice, in this connection, said: "The will of John O. Langley created a life estate for the benefit of his daughter Eliza. As he (the testator) made no disposition of the property in the event of her failure to exercise the power of appointment, he was intestate to that extent. Hence the remainder vested in his heirs at law, subject to the daughter Eliza's life estate, and subject to be divested by the exercise of the power of appointment by her. At the time of the conveyance by Eliza to the demandant, she was therefore life tenant and owner in fee of one-half the remainder, subject to her own power of appointment, and shortly after this mortgage she acquired the entire

interest in remainder, and was appointed trustee under the will of her father, being the first to qualify as such trustee. The inquiry is whether the conveyance to the demandant passed title so as to render ineffective the deed of Barlow, subsequently appointed trustee.. Under these circumstances there was a merger of the life interest and the ownership of the remainder, so as to vest an absolute title in Eliza. It is a general principle that where property is given for the benefit of certain persons in such a way that no one else has or can have a possible interest in it, they are, in effect, absolute owners, and should have the control and disposition. In such a case equity will decree a dissolution of the trust. *Sears v. Choate,* 146 Mass., 395. It is also held generally that where the legal and equitable title of real estate both vest in the same person, the equitable title will merge in the legal estate, and absolute ownership will ensue divested of the trust. 1 Perry on Trusts (6 .ed.), 347, and cases there cited. The present case calls for the application of this principle, and it works an equitable result." He speaks of "an equity," because there was a trustee in that case, and the estate was therefore of an equitable nature, but this made no difference in the result, and does not at all distinguish the cases from each other. We especially refer here to the case of *Parks v. Robinson, supra,* in which is cited with approval *Cummings v. Shaw,* 108 Mass., 159; *Troy v. Troy,* 60 N. C., 623; *White v. White,* 21 Vt., 250; *Wright v. Eastbrook,* 121 N. C., 156. The Court said in the *Cummings case:* "This clause gives to the plaintiff either an estate in fee, on the ground that power to convey (or will) an absolute estate is an attribute of ownership, and carries with it a fee, or it gives an estate for life, with power to convey or will an absolute estate; and upon either construction the plaintiff is able to convey to the defendant a fee simple, and thus perform his contract. If a question had arisen as to the validity of a devise over, it might be important to determine whether the plaintiff took an estate for life or in fee, but it cannot be so in this case." It was said in the *Troy case, supra:* "This is a power appurtenant to her life estate; and the estate which may be created by its exercise will take effect out of the life estate given to her, as well as out of the remainder. A power of this description is construed more favorably than a naked power given to a stranger, or a power appendant, because, as its exercise will be in derogation of the estate of the person to whom it is given, it is less apt to be resorted to injudiciously than one given to a stranger, or one which does not affect the estate of the person to whom it is given." And practically the same was said in *Wright v. Westbrook, supra,* where the language is: "Where property was given to one during her natural life, 'with full power to dispose of the same,' with the permission of her husband, a deed executed by husband and wife conveyed a good and indefeasible title."

Mr. Fearne says, in his great treatise on Contingent Remainders and Executory Devises, 4 Am. Ed., secs. 778, 779, that merger of estates take place, as follows: "By act of the tenant for life, or in tail; by acceptance of the reversion; by surrender, bargain, and sale, or lease and release to the remainderman or reversioner; by bargain and sale, or lease and release, where the tenant for life has also the immediate remainder or reversion; by joining the remainderman or reversioner in a conveyance; by descent of the inheritance on the particular tenant, subsequently to the taking effect of the particular estate." This will gives a life estate to the widow of the testator, Margaret Overman, with a contingent fee provided she survives her daughter Alice Tillett, and all of Alice's children, with contingent remainder in fee to Alice, provided she survives the widow and dies without leaving issue of her body begotten; with general power of appointing the estate to such uses as she may designate, with limitation over to her child or children surviving her. We think that the doctrine of merger applies, and that, because of Alice's act in conveying the land, her power of appointment is defeated. In any view presented (not including the right to convey under the power), the title transferred to the purchaser of the land by the deed is a valid and indefeasible one, any defect inhering in it, by reason of the possibility that Mrs. Alice Tillett may again marry and have children, one or more of whom may survive her, being waived. We considered this feature of waiver very recently in *Malloy v. Acheson*, 179 N. C., pp. 90, 92, and 95, and refer to that case for the discussion of it, and for its effect upon this case.

Our conclusion is that the court erred, and that the judgment should have been for the plaintiffs. It will, therefore, be reversed, and judgment entered according.

Reversed.

HOKE, J., concurs in result.